**Robbins M. CLAYPOOL and David M. Best, d/b/a Gulf Tool Company, Plaintiffs,**

v.

**HOUSTON OIL FIELD MATERIAL COMPANY, Inc., National Instrument Corporation, Weldon L. Medders, Richard E. Golemon and George O'Leary, Defendants.**

Civ. A. No. 9688.

United States District Court
S. D. Texas,
Houston Division.

July 3, 1958.

Hayden & Pravel, Houston, Tex. (Jack W. Hayden and B. R. Pravel, Houston, Tex.), for plaintiffs.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex. (James F. Weiler, Austin C. Wilson and Jefferson D. Giller, Houston, Tex.), for defendants.

HANNAY, Chief Judge.

Plaintiffs, Robbins M. Claypool and David M. Best, individually and dba Gulf Tool Company, residents of Harris County, Texas, filed this action against defendants, Houston Oil Field Material Company, Inc. (hereinafter referred to as Homco), a Delaware corporation having a permit to do business in Texas with its principal place of business in Houston, Harris County, Texas, National Instrument Corporation, a Texas corporation no longer in existence, George O'Leary, Weldon L. Medders, both residents of Harris County, Texas and Richard E. Golemon, a resident of Texas, and seek to recover damages for the infringement of claims 5–11 of Letters Patent No. 2,698,761, issued to plaintiffs on January 4, 1955, and pray for injunction against further infringement by said defendants. Plaintiffs also seek damages for the manufacture and sale of infringing devices prior to the issuance of plaintiffs' patent, and allege deliberate and wilful infringement.

Defendants allege that the patent in suit is void and not infringed.

The case came on for trial on plaintiffs' First Amended Complaint and defendants' Answer thereto and counterclaim for declaratory judgment for patent invalidity. The parties agreed that any issue of damages would be established after the trial on the merits as to issues of patent validity and infringement. All other issues were submitted to the Court which here makes and enters the following Findings of Fact and Conclusions of Law:

**1.**

Robbins M. Claypool and David M. Best are the lawful owners of the patent in suit, No. 2,698,761, issued on January 4, 1955 (Stip. TR A–55).

### The Invention

### The Problem

**2.**

A safety joint is a joint which is put in a string of oil well pipe for safety so that the well string can be parted or separated at a preferred point (Best TR 9, 209, 210, Crook 808, 809.)

**3.**

In August, 1948, plaintiffs began devoting their attention to devising a new type of safety joint to try to overcome the disadvantages and problems encoun-

tered with using safety joints offered to the oil industry at that time (Best 2, 3), which disadvantages and problems included:

(a) The connecting means used in safety joints at the time plaintiffs first began working to develop their safety joint was unsatisfactory because such connecting means in many cases would gall and bind and would not operate properly (Best TR 3, 5; Medders TR 592, 593).

(b) The safety joints offered to the oil industry at the time of plaintiffs' invention made it necessary for the industry, or a user, to purchase different types of safety joints, depending upon what the user wanted to do and there was no one safety joint offered to the oil industry which would do many, many different things (Best TR 5, 6, 211, 212).

(c) There was no one safety joint which was constructed and connected so as to prevent premature release and which also could transmit forces longitudinally of the drill string and transmit a twist or torque in the drill string either to the right or to the left while the safety joint was connected (Best TR 6, 7, 211, 212, 216).

(d) Also, plaintiffs wanted to try to provide a safety joint so that there would be no restriction to fluid or to tools that might be run inside of the pipe on which it was supported and which safety joint could be maintained in sealed relationship as the safety joint was manipulated in the well bore (Best TR 6, 206–220; Pl. Ex. 21, page 133).

4.

The problems of safety joints had been prevalent in the oil industry for a number of years and was intensified because the failure of safety joints was the direct cause of fishing operations which were required to remove the inoperative safety joints from well bores (Best TR 3, 5; Pl.Ex. 16—patent in suit, col. 1, lines 24–36).

5.

Prior to the invention of the patent in suit, there was no safety joint which

included a means for connecting the safety joint together to prevent premature release on the one hand, but which connecting means could easily be actuated to release the joint and in which longitudinal and rotational forces could be transmitted through the joint in either direction, while maintaining the safety joint leak proof (Best TR 206–220).

The Claypool-Best Safety Joint of the Patent In Suit Solved The Problems and Achieved Commercial Success

6.

The Claypool-Best safety joint described and claimed in the patent in suit satisfies fully all of the requirements of the problems set forth in findings 3, 4 and 5 above. For example, the patent in suit discloses a safety joint construction that provides a male and female member in abutting (assembled) relation with means connecting the male and female member together to prevent premature release therebetween, but which means can be released without fear of galling or binding (Pl. Ex. 16—patent in suit, col. 1, lines 28–36; claims 5–11), and a safety joint which is leak proof (patent in suit, col. 1, lines 35–40).

Also, with the safety joint construction disclosed in plaintiffs' patent, it is possible to transmit torque (twist) to either the right or the left, while a longitudinal force is placed on the drill string in which the safety joint is positioned (patent in suit—col. 3, lines 70–77), and there is no restriction to fluid or tools that might be run inside of the pipe (patent in suit, col. 1, lines 39–46).

Also, with the construction of the safety joint described and claimed in plaintiffs' patent, it is possible to transmit longitudinal and rotational forces in either direction of the safety joint, while maintaining the safety joint sealed from inside to outside (Best 206–220) (Patent Office Bd. of Appeals Pl. Ex. 21, page 133).

7.

The defendant, Homco has extensively advertised the safety joint of the invention in the industry and uses the safety

joint with its Washover Back-Off Connector tool and Spear tool (Medders 639, 640, 644; Pl. Ex. 20, 71, 72). Defendant Homco has manufactured and sold up to May, 1955, at least 837 safety joints of the type involved in the present lawsuit (Justice TR 1155).

### 8.

Homco's employee, Golemon, called Homco's employee, Medders, at home in December of 1949 and stated that he wanted a new tool, or safety joint which would get away from the disadvantages of the safety joints then being manufactured by defendant Homco. Defendant Homco at this time was manufacturing the so-called Thurston, Massey and Blondie Reynolds safety joints, all of which were objectionable. Goleman told Medders that there was a market for a new type of safety joint. (Medders TR 593, 594, 649, 650, 676, 1117; Def. Ex. 14).

### The Solution was Achieved by the Combination of Elements Recited in the Claims

### 9.

Claims 5–11 of the Claypool-Best patent 2,698,761 express the novel concept of the Claypool-Best safety joint in terms of the combination of elements recited in the claims, including the structure of the elements and their physical relationship to accomplish the functions recited therein; and said novel concept residing in providing a tool which has a male and female member in abutting (assembled) relation with interlocking means arranged to prevent premature release between the male and female tool parts, and which safety joint can transmit longitudinal and rotational forces in either direction of the well string while, if desirable, maintaining a leak proof safety joint (patent in suit; TR 206–220).

### The Prior Art Produced No Satisfactory Solution and Fails to Invalidate the Claypool-Best Patent

### 10.

Defendants cited 43 patents as allegedly anticipating the invention of plaintiffs' patent and of this number, defendant had enlarged prints of each of the following:

(a) Def. Ex. 14—Thurston Patent 2,-508,306 (assigned to Homco and relating to a threaded type safety joint)

(b) Def. Ex. 15—Burney Patent 1,-523,928

(c) Def. Ex. 18—Waggener Patent 2,-572,895

(d) Def. Ex. 20—Waggener Patent 2,-610,077

(e) Def. Ex. 22a and 22b—Baker Patent 2,228,243

(f) Def. Ex. 24—Reed Patent 2,309,-866.

Defendants' Expert, Mack Crook stated that the above designated exhibits were the most pertinent patents of all the patent references cited by defendant and admitted that the Patent Office at some stage during the lengthy proceedings of plaintiffs' application for patent considered each and every one of the above, except Baker 2,228,243, Reed No. 2,309,866 and Waggener No. 2,610,077 (Crook TR 1004, 1019).

### 11.

Defendants' Expert did not offer any testimony to try to show that either Baker 2,228,243, Reed 2,309,866 or Waggener 2,610,077 were any more pertinent as references than those patents considered by the Patent Office during the prosecution of plaintiffs' patent and defendants' Expert admitted that individual components such as "J-slots," "Shear pins," and reduced diameters were items which had been shown in the patents considered before the Patent Office during the prosecution of plaintiffs' application for patent (Crook TR 1011, 1012, lines 10–12; 1013, 1014)

#### (a) Reed 2,309,866

Defendants admitted (Crook TR 1021) that if a well string twists as it is being lowered into the well bore, the alleged

"interlock" of the Reed reference would have the danger of prematurely unlocking; therefore, Reed fails to disclose a means to interlock a safety joint as recited in each of claims 5, 6 and 7 of plaintiffs' patent which interlock prevents premature release of the safety joint and was one of the problems which plaintiffs' desired to overcome by their safety joint design. The Reed patent even states that it is undesirable to provide a "jamming interlock," and that it is desirable to provide a tool construction which can be "freely turned to the left" (Reed patent, page 2, col. 2, lines 30–34). If Reed is moved to the left, then the "drive" lug B will move out of the recess 13' at the bottom thereof and will slide along longitudinal slot 13. Therefore, the Reed device does not provide a construction wherein it can be turned or twisted either right or left while a longitudinal force is being taken on the drill string which is another problem that plaintiffs' safety joint was designed to overcome. Also, the Reed construction does not disclose a safety joint where the members are in originally locked or abutting relationship (assembled relationship) and thereafter adapted to be moved longitudinally relative to each other and remain in sealed interengaged relationship. Therefore, the Reed device does not anticipate claims 8–11 since it does not provide a leak proof safety joint as contemplated by plaintiffs' patent (Board of Appeals decision, Pl.Ex. 21, p. 133; Crook TR 1028, 1029).

### (b) Baker 2,228,243

Defendant admitted (Crook 1038, 1039 and 1040) that the Baker patent did not disclose the particular groove construction with a separator lug therebetween and a shoulder at one end of the groove as disclosed by plaintiffs' patent, and that, therefore, Baker could be turned or twisted in only one direction. Claims 5–11 of plaintiffs' patent recite a groove construction which permits plaintiffs' tool to be twisted either right or left without coming apart, and therefore Baker does not anticipate the structure recited in each of these claims. Since the defendant admits that the construction shown in the Baker patent would separate if a pulling and turning force were applied thereto, Baker does not disclose a well tool as contemplated by plaintiffs' patent which is leak proof. Therefore, Baker does not anticipate the structure of claims 8–11 of plaintiffs' patent (Pat. Office Bd. of Appeals, Pl.Ex. 21, p. 133).

### (c) Waggener 2,610,077

Defendants did not offer any evidence to show that the Waggener patent 2,610,-077 was any different from the Waggener patent 2,572,895 considered by the Patent Office during the prosecution of the plaintiffs' application for patent and defendants' expert even admitted that the only difference was that one Waggener patent was for a down-jar and the other was for an up-jar (TR 1041 and 1042). Neither of the Waggener patents show an interlock wherein the end of the female member abuts the shoulder on the male member, as specifically recited in each of claims 5–11. The Waggener patent does not provide a tool construction which has male and female parts abutting (assembled) and which is leak proof as the male and female are moved relative to each other as noted by the Board of Appeals (Pl.Ex. 21, pg. 133) during the prosecution of plaintiffs' application for patent and, therefore, Waggener 2,610,077 does not anticipate plaintiffs' patent.

### 12.

The defendant also urged the partial showing in the Composite Catalog (the same in Pl.Ex. 17 and Defs.Ex. 37, 38 and 39). However, defendant Homco admitted that at least as early as January, 1950, it was familiar with the showing in the Composite Catalog which is before it filed its application in February, 1951; and Homco's Medders testified (TR 653) that the safety joint was not disclosed in the Composite Catalog. Homco caused its employees (Medders-Golemon) to execute an oath in filing application that the invention had not been disclosed for more than one year prior

to the application, and defendants apparently, therefore, did not at that time consider the Composite Catalog showing a "disclosure" (Medders TR 653). The opinion of defendants' expert as to what the Composite Catalog showing disclosed was given only after defendants' expert had opportunity to examine both plaintiffs and defendants tools (Crook TR 1048, 1049).

13.

Defendants' expert admitted (TR 953) that he has had only theoretical experience and no practical experience in operating oil field tools and his "20/20 vision of hind sight" in interpreting the Composite Catalog showing, particularly after viewing plaintiffs' and defendants' tool is not persuasive. Defendants' expert admitted (TR 899, 1058, 1082; Def. Ex. 37, 38 and 39) that the Composite Catalog did not show certain structural features recited in the claims and, therefore, the Composite Catalog illustration does not anticipate plaintiffs' patent.

14.

Plaintiffs' invention as disclosed in its patent and claimed in combination claims 5–11 is not disclosed in any of the devices of the prior art patents or publications.

15.

It was not obvious to a person or persons skilled in the art of well tools at the time of the making of the invention described and as claimed in the patent in suit to provide a safety joint with a locking means which would not actuate prematurely and which safety joint could also transmit longitudinal and rotational forces in either direction; nor was it obvious to a person or persons skilled in the art of well tools at the time of the making of the invention described and claimed in the patent in suit to provide a safety joint with a locking means to prevent premature release, which could also transmit longitudinal and rotational forces in either direction while maintaining the safety joint in sealed interengaged relationship.

16.

The combination of elements recited in claims 5–11 inclusive, provides a safety joint which accomplishes many different functions in an oil well with a single tool and is, therefore, far more advantageous than other safety joints in use at the time of plaintiffs' invention (Best TR 4, 5).

17.

The combination of elements recited in claims 5–11 inclusive, produces a new, useful and unobvious result in a cheaper and more advantageous way than possible with prior art devices.

History of the Plaintiffs' Patent Application in the Patent Office

18.

The claims in plaintiffs' patent application were allowed by the Patent Office and thereafter plaintiffs' patent application became involved in an "interference" with an application filed by the defendant Homco in the name of its employees, Weldon L. Medders and Richard E. Golemon, upon the same invention (Pl.Ex. 21, 64, 65, 66 and 67; Wilson opening statement (TR A–21.))

19.

Defendant Homco had made a novelty search in the Patent Office prior to filing its Medders-Golemon application, and on June 26, 1950, Mr. Weiler wrote defendant Homco advising Homco that "the safety joint appears to be novel" and recommended filing patent application (Pl.Ex. 49; TR 561, 632).

20.

In February, 1953, Homco's Medders admitted to plaintiff Best that Claypool and Best and not Mr. Medders and Golemon were the true inventors of the safety joint involved in the interference proceedings in the Patent Office at that time; thereafter, in July of 1953, Mr. Weiler filed a Motion to Dissolve the Interference (Best TR 119, 120; Pl.Ex. 66—Cert. Copy of Proceedings in Pat. Office Interference.)

**21.**

The Examiner of Interferences overruled the defendant Homco in its Motion to Dissolve (Pl.Ex. 66—pages 62–69). The Examiner of Interferences dissolved the interference between plaintiffs and defendants on grounds independently advanced by him and, accordingly, plaintiffs' application for patent was returned to the division in which it was pending for further action, and was there rejected by the same Examiner in view of his independent findings during the interference proceedings (Pl.Ex. 21, Pl.Ex. 66).

**22.**

Defendant Homco thereafter permitted the application it had filed in the name of Medders and Golemon to become abandoned. The plaintiffs appealed the Examiner's rejection of their patent application to the Board of Appeals in the U. S. Patent Office and the Board of Appeals expressly overruled the Examiner and thereafter the patent issued to the plaintiffs in the instant litigation (Pl. Ex. 16, 21 and 64).

**23.**

The phrase:

"said last named portion having an axial length of substantial extent, said length being greater than the diameter of said end portion"

in item "k" of claims 5, 6 and 7 (Pl. Ex. 23) could refer to either the female member or the male member because the file history of the patent in suit reflects that the claims were allowed because the combination including the interlock means was not shown in the prior art. (Pl.Ex. 21, pg. 84).

**24.**

Even if claims 5, 6 and 7 are construed so that item "k" (Pl.Ex. 23) refers to the "male" member, then Homco's safety joints Types B (including the Washover Back-Off and Spear) have an end portion on the female member whose length is greater than its diameter for functioning to provide stability to the safety joint in substantially the same manner as when the male member has an end portion whose length is greater than its diameter (Crook TR 957, 974; Medders TR 649, 1126, 1127; Best TR 526–528; Pl.Ex. 22, 36 and 37).

**25.**

The patent specification, the file history, and particularly the Board of Appeals decision does not support defendants in their interpretation as to the function of the seals. The Board of Appeals did not allow the patent in suit merely because claims 8–11 called for two seals (Crook TR 1018). The Board of Appeals stated that it could not find any prior art disclosure of a safety joint in which the male and female members were in abutting (assembled relationship) initially and which male and female members could move axially relative to each other while maintaining them in sealed interengaged relationship (see plaintiffs' Ex. 66—p. 133—Bd. of Appeals decision; Crook TR 1078, 1079), which can be accomplished with one seal (Crook TR 1028; Best 245, 246; Medders 1130–1137); however, seals are not necessary in all uses of the safety joint as recognized by applicants in filing the application with claims "calling for no seals" (admitted pg. 44 of Def. Brief) and as recognized by the Patent Office in granting claims 5, 6 and 7 which have no seal means specifically included.

**26.**

As a result of the interference proceedings and the appeal to the Board of Appeals, plaintiffs application for patent was subjected to lengthy administrative proceedings in the Patent Office.

**27.**

Defendant Homco admitted that it could have refused to place its Medders-Golemon application in interference with the Claypool-Best application and as a result of the interference, plaintiffs' patent was delayed in issuance and plaintiffs were thereby subjected to needless additional expense and attorneys' fees.

**28.**

Defendant Homco advertised the Type B. Safety Joint as coming under the one

patent application it had filed in Medders-Golemon names (Medders TR 640, 641; Pl.Ex. 71, 72).

## Infringement

#### 29.

Defendant Homco, prior to the filing of the original complaint, has manufactured and sold its Type A1 Safety Joint as represented in Pl.Ex. 30.

Defendant Homco, since the issuance of the patent in suit and prior to the filing of the original complaint, has manufactured, used and sold its Type A2 Safety Joint as shown in Pl.Ex. 33.

Defendant Homco, since the issuance of the patent in suit and prior to the filing of the original complaint has manufactured, used and sold its Type B safety joint as shown in Pl.Ex. 22, 36 and 37 (the latter two being the Back-Off Connector and Drill Collar Spear which are the Type B with minor changes—def. brief—page 6; Crook TR 937, 938 and 946).

#### 30.

The Homco Safety Joints, Types A1, A2 are the same except that the A2 Safety Joint uses only one instead of two seal rings (Medders TR 655, 1136, 1137). The one seal ring of the Type A2 Safety Joint performs the same function of providing a leak proof safety joint in the same manner as the two seals of the A1 Safety Joint (Medders TR 656, 657; Crook 985, 986 and 987).

#### 31.

The Homco safety joints Types B (including the Back-Off Connector and Spear) and A2 are the same except that the Type B Safety Joint is "shortened" (Medders TR 655, 1106, 1126, def. ex. 80). The one seal of the Types B and A2 performs the same function of providing a leak proof safety joint in the same manner as the two seals of the A1 safety joint (Medders TR 656, 1130–1137; Crook TR 986, 987, 1027). Defendant Homco's safety joints Types A1 and A2, B (including the Back-Off Connector and Spear Safety Joint) each accomplishes the same function in substantially the same manner as the safety joint disclosed and claimed in claims 5–11 of plaintiffs' patent in suit (Best TR 206–220).

#### 32.

Defendant offered no evidence to show that the Type A1 tool was not covered by claims 5, 6 and 7, and defendant admitted that the Type A2 Safety Joint was covered by claim 5 (Crook TR 997).

Each element of claims 5, 6 and 7 or its mechanical equivalent is found in defendant Homco's Type B safety joint (including the Washover Back-Off Connector and Spear).

#### 33.

Defendant Homco admitted that claims 8, 9, 10 and 11 read on the Type A1 Safety Joint. Each element of claims 8, 9 and 10 or its mechanical equivalent is found in defendant Homco's Types A2 and B (including the Washover Back-Off Connector and Spear). (Wilson TR 231).

#### 34.

Each element of claim 11, or its mechanical equivalent is found in each of defendant Homco's Types A1, A2, and B (including the Washover Back-Off Connector and Spear Safety Joints).

## Notice of Infringement, Relationship of the Parties and Character of Infringement

#### 35.

In the summer of 1947, defendant Homco requested plaintiffs to design a "reversing tool" for them, and as a result of this request, plaintiffs and defendant Homco entered into an agreement on September 22, 1947 (TR A–38 through A–40; Pl.Ex. 1A).

#### 36.

Under the agreement, plaintiffs furnished complete "know-how" for the manufacture of the reversing tool and Weldon L. Medders, a Homco employee was designated by Homco to receive all such information from the plaintiffs. As a result of this plaintiffs were in daily, close contact with Medders from September of 1947 through and after January of

1950 (TR A–44—A–50, inclusive; 574; Pl.Ex. 1N, 10).

**37.**

James F. Weiler, a patent attorney, filed patent application upon plaintiffs' reversing tool construction, Homco paying the patent costs. During the prosecution of the reversing tool patent application, plaintiffs conferred and worked closely with Mr. Weiler (TR 91, 92; Pl. Ex. 1C–1L inclusive). Defendant Homco admits that this patent on plaintiffs invention which it owns is valid and duly and legally issued (Pl.Ex. 1B; First Amended Complaint—para. VIII; Def. Ans. Para. 8).

**38.**

It was while plaintiffs were developing the reversing tool and working quite closely with Homco's Medders and Weiler that they first began devoting their attention to developing the invention covered by the patent in suit. Upon express invitation and solicitation by Homco's Medders, plaintiffs disclosed to Homco's Medders the details of their safety joint and only so that defendant Homco, at its request, could manufacture plaintiffs' safety joint for plaintiffs' exclusive use and benefit (TR 17, 19; Medders 577, 578, 579; Pl.Ex. 3A, 3B and 3C).

**39.**

After plaintiffs conducted numerous tests, the safety joint was in finished form in November, 1949 (TR 55, 57, 58, 59, 554; Pl.Ex. 10A, 10B, 46; TR 357).

**40.**

After Homco's Golemon called Medders in December, 1949, (Finding No. 8) Medders went to work and completed Homco's safety joint drawings in just 14 days; Medders admitted that plaintiffs' first drawings shown to him were the same dimensions as his first shop drawings on the defendant Homco's tool (TR 608–610, 613, 616–618, 637, 638; Pl.Ex. 3A, 3B, 3C, 42). Defendant Medders also admitted that until January of 1950, shortly before the time that he allegedly began designing Homco's tool, he had been on an oil well only a "few times," and that his only employment prior to his employment with Homco was in an orchestra, as a match salesman and for two years as a draftsman (Medders TR 557, 558, 573).

**41.**

Up to the time that the defendant Homco first manufactured and sold plaintiffs' safety joint with an interlock, the plaintiffs had not disclosed the completed safety joint to anyone other than to Homco, and this disclosure was for the express purpose, at Homco's invitation, of manufacturing the tool for plaintiffs' exclusive use; nor had they given permission to Homco to manufacture the tool for anyone other than for plaintiffs (Best TR 78, 80).

**42.**

The tool defendant began manufacturing is substantially identical in all respects to plaintiffs' safety joint which had been disclosed to defendant at defendants' invitation and solicitation (TR 90–97; Wilson A–21 opening statement). Mr. Weiler in October of 1950 did not deny that the safety joint Homco was manufacturing was the same as plaintiffs'; Mr. Burns, Chief Engineer of defendant Homco admitted in December of 1950 that the Homco safety joint was identical to the tool which had been shown to him in plaintiffs' drawings and these were the same drawings which had previously been shown to Mr. Medders so that Homco could manufacture, at its request, the safety joint of plaintiffs for plaintiffs. (TR 94, 95, 100, 107).

**43.**

Defendant Homco had knowledge of the pending patent application of plaintiffs by reason of the interference, and had knowledge of plaintiffs' tool only because plaintiff had disclosed it to defendants, at defendants invitation and solicitation (Medders TR 580, 581, 582) and the defendants received written notice of infringement (Def. Ex. 83A).

**44.**

Defendant Homco after it had obtained knowledge from plaintiffs of their tool and after the patent in suit issued "shortened" the "Type A" tool to form

the "Type B", without modifying or changing the function of the previously employed "Type A" safety joint (Medders TR 655, 659, 1106, 1126, 1127; Def. Ex. 80).

45.

The Homco Type B Safety Joint is merely an imitation and altered version of the Homco Types A₁ and A₂ Safety Joint, all of which are substantially identical in function to accomplish the same purpose as plaintiffs' safety joint (Findings 30, 31 and 32).

46.

The defendant Homco has gone forward with its infringing activities since the issuance of the patent in suit with full knowledge of said patent and of its infringement thereof.

47.

The individual defendants, George O'Leary, Weldon L. Medders and Richard E. Golemon, acted as employees of the defendant Homco. (Medders TR 559, 592; TR 680). George O'Leary was president of Homco while he simultaneously was trustee of defendant National Instrument Corporation; defendant Medders, on instructions from his employer Homco, performed duties at National Instrument Corporation while on Homco's payroll; Bennie Hogan, a Homco employee was shop superintendent at National Instrument Corporation on instructions from Homco. (TR 680; Medders TR 573, 574).

Conclusions of Law

1.

This Court has jurisdiction of the parties and subject matter.

2.

Plaintiffs are the owners of the patent in suit and of all claims for damages for infringement thereof.

3.

■ Each of claims 5–11 of plaintiffs' patent is valid because the presumption of novelty and validity attending the grant of plaintiffs' patent by the Patent Office is here strengthened since:

(a) Plaintiffs' patent issued only after lengthy proceedings in the Patent Office;

(b) The closest prior art was cited and considered by the Patent Office;

(c) Defendant Homco caused application for patent to be filed on the same invention, thereby evidencing in defendant Homco's opinion, independent patentability over the prior art;

(d) The combination of elements in the patent produces a new, useful and unexpected result, and the patent produces its result in a cheaper and more advantageous way than possible with prior art devices;

(e) The defendant, although denying invention in the patent, imitates and copies the patent, and has not abandoned its use thereof;

(f) The invention has met with commercial success; and

(g) the patent discloses a novel construction which has utility.

5th Circuit:

Jeoffroy Mfg., Inc., v. Graham, 1955, 219 F.2d 511; Southern States Equipment Corp. v. USCO Power Equipment Corp., 1953, 209 F.2d 111; Cameron Iron Works, Inc., v. Stekoll, dba Speed-O-Valve Co., 1957, 242 F.2d 17; Memphis Metal Mfg. Co. v. Consolidated Venetian Blind Co., D.C.S.D.Tex.1956, 142 F.Supp. 279 (no appeal); Hunt Tool Co. v. Lawrence, 1957, 242 F.2d 347; Jeoffroy Mfg., Inc., v. Graham, 1953, 206 F.2d 772; Robertson Rock Bit Co. v. Hughes Tool Co., 1949, 176 F.2d 783; Troup v. Cox, 1943, 133 F.2d 83; Huston v. Barrett, 1928, 23 F.2d 907; Atlantic, Gulf & Pacific Co. v. Wood, 1923, 288 F. 148; Allis-Chalmers Mfg. Co. v. Columbus Electric & Power Co., 1927, 19 F.2d 860; O. K. Jelks & Son v. Tom Huston Peanut Co., 1931, 52 F.2d 4.

Supreme Court:

Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp, 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Parks v.

Booth, 1880, 102 U.S. 96, 26 L.Ed. 54; Temco Electric Motor Co. v. Apco Mfg. Co., 1921, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Adamson v. Gilliland, 1917, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356; Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 1892, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983, 984; Lehnbeuter v. Holthaus, 105 U.S. 94, 26 L.Ed. 939; Western Electric Co. v. La Rue, 139 U.S. 601, 11 S.Ct. 670, 35 L.Ed. 294.

1st Circuit: Sheridan v. Silver-Brown Co., D.C., 4 F.Supp. 759, affirmed 71 F.2d 935, certiorari denied 1934, 293 U.S. 590, 55 S.Ct. 105, 79 L.Ed. 685; 2nd Circuit: Ensign Carburetor Co. v. Zenith-Detroit Corp., 1929, 36 F.2d 684; Smokador Mfg. Co. v. Tubular Products Co., 1929, 31 F.2d 255; Monogram Mfg. Co. v. Glemby, 1943, 136 F.2d 961; 3rd Circuit: Slattery v. Godfrey, 1926, 13 F.2d 350; Flintkote Co. v. National Asbestos Mfg. Co., 1931, 52 F.2d 719; Julius Levine & Co. v. Automatic Paper Machinery Co., 1933, 63 F.2d 547; 4th Circuit: Baker-Cammack Hosiery Mills v. Davis Co., 1950, 181 F.2d 550; Otto v. Koppers, 1957, 246 F.2d 789; Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, certiorari denied 298 U.S. 673, 56 S.Ct. 938, 80 L. Ed. 1395; Florence-Mayo Nuway Co. v. Hardy, 1948, 168 F.2d 778; Chesapeake & Ohio Railway Co. v. Kaltenbach, 1938, 95 F.2d 801; Ackermans v. General Motors Corp., 1953, 202 F.2d 642; 6th Circuit: Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 1930, 48 F. 2d 73; 7th Circuit: Artmoore Co. v. Dayless Mfg. Co., 208 F.2d 1, certiorari denied 1953, 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075; Hunt v. Armour & Co., 1950, 185 F.2d 722; Charles Peckat Mfg. Co. v. Jacobs, 178 F.2d 794; 8th Circuit: Kansas City Southern Ry. Co. v. Silica Products Co., 1931, 48 F.2d 503; 10th Circuit: Williams Iron Works Co. v. Hughes Tool Co., 1940, 109 F.2d 500; Callison v. Dean, 1934, 70 F.2d 55.

**4.**

The burden of proving invalidity of a patent rests on the defendants and any reasonable doubt is resolved against the party seeking to upset the validity of a patent. 35 U.S.C. Sec. 282; Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 1955, 219 F.2d 511, and cases cited therein; Cameron Iron Works v. Stekoll, dba Speed-O-Valve Co., 5 Cir., 1957, 242 F.2d 17.

**5.**

The prior art offered in evidence by defendants does not anticipate any of claims 5–11 of the Claypool-Best Patent, 2,698,761. Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 1955, 219 F.2d 511; Memphis Metal Mfg. Co. v. Consolidated Venetian Blind Co., D.C.S.D.Tex.1956, 142 F.Supp. 279 (no appeal) and other cases cited under No. 3 above.

**6.**

Each of claims 5–11 sets forth a structure which involves invention over the prior art. Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 1955, 219 F.2d 511; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and cases cited under No. 3 above.

**7.**

The Homco safety joints Types A1, A2, and B (including the Washover Back-Off Connector and Spear Safety Joints) each infringe claims 5, 6 and 7 because these safety joints fall clearly within each of said claims, and include all of the elements, or the mechanical equivalent of the elements of each of the claims and accomplish the same function of plaintiffs' tool in substantially the same manner and obtain substantially the same results. Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 1953, 206 F.2d 772; Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 1953, 209 F.2d 111; Matthews v. Koolvent, Metal Awning Co., 5 Cir., 1946, 158 F.2d 37; Troup v. Cox, 5 Cir., 1943, 133 F.2d 83; E. I. M. Co. v. Philadelphia Gear Works, 5 Cir., 1953, 205 F.2d 28; Graver Tank & Mfg. Co., Inc., v. Linde Air Products, 1950, 339 U.

S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 1935, 80 F.2d 912, certiorari denied 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 1938, 97 F.2d 245; Brunswick-Balke-Collender Co. v. Kuehne Mfg. Co., 110 U.S.P.Q. 481, 1956, D.C.N.D.Ill. (not reported in Fed. Rep. system); Hunt Tool Co. v. Lawrence, 5 Cir., 1957, 242 F.2d 347.

**8.**

The Homco safety joint Type A1 infringes claims 8–11 because the accused tool falls clearly within the claims. Graver Tank & Mfg. Co., Inc., v. Linde Air Products, 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097.

**9.**

The Homco Safety Joints Types A2 and B (including the Washover Back-Off Connector and Spear safety joint) infringe each of claims 8, 9, 10 and 11 because these safety joints fall clearly within each of said claims and include all of the elements, or the mechanical equivalent of the elements of each of the claims. Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 1953, 206 F.2d 772; Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 1953, 209 F.2d 111; Graver Tank & Mfg. Co., Inc., v. Linde Air Products, 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, and other cases cited under No. 7 above.

**10.**

The Homco Types A2 and B Safety Joint (including the Washover Back-Off Connector and Spear Safety Joint) infringe claims 5–11 because they are merely altered and equivalent versions of plaintiffs' safety joint. Hunt Tool Co. v. Lawrence, 5 Cir., 1957, 242 F.2d 347, 353; Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Troup v. Cox, 5 Cir., 1943, 133 F.2d 83; Matthews v. Koolvent, 5 Cir., 1946, 158 F.2d 37.

**11.**

Defendant Homco was notified of its infringement before the filing of the original complaint herein.

**12.**

The counterclaim filed herein by defendants is dismissed.

**13.**

Plaintiffs are entitled to an injunction against further infringement of their patent and upon final judgment for proper damages and to an award of costs.

Clerk will notify counsel.