**HOUSTON OIL FIELD MATERIAL COMPANY, Inc., et al., Appellants,**

v.

**Robbins M. CLAYPOOL and David M. Best, d/b/a Gulf Tool Company, Appellees.**

No. 17529.

United States Court of Appeals Fifth Circuit.

Aug. 6, 1959.

Rehearing Denied Oct. 9, 1959.

Austin C. Wilson, Jefferson D. Giller, James F. Weiler, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellants.

Jack W. Hayden, B. R. Pravel, Hayden & Pravel, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an interlocutory decree of the trial court sustaining the validity of claims 5 through 11 of Patent No. 2,698,761, and finding that all tools in suit made by appellants constituted infringement.

The findings of fact and conclusions of law, which set out the nature of the patent and the need sought to be filled by the alleged invention are reported at 166 F.Supp. 173, sub nom. Claypool v. Houston Oil Field Machinery Co. We shall therefore not repeat the findings and conclusions; nor is it necessary to discuss in detail the minute structural features of the devices of the parties. Briefly, the patent relates to a safety joint to be inserted in a string of production tubing in a gas or oil well, which is so constructed that it may be taken apart while thousands of feet below the surface of the ground by manipulation at the surface. This permits a skilled operator to disconnect and withdraw the tubing above such safety joint in the event such removal becomes desirable.

A safety joint that can operate only by the unscrewing of the threads by which it is connected to the tubing above or below it is unsatisfactory, and the court's finding that there was need for a different disconnecting means is fully supported by the evidence.

Appellee's device is designed to permit the upper part to be disconnected from the lower by the arrangement of a lug on the innerside of the lower part in juxtaposition with a corresponding slot on the surface of the upper member. This method of connecting and disconnecting pipes or tubing by use of a "J" slot, as it is known, is not new. It in-

volves the movement of one part relative to the other until the lug on the one is opposite a cross-groove of the other, followed by a turn or twist until the lug is opposite a longitudinal groove extending the length of the joints to be separated. A sufficient pull will then separate the upper and lower members and complete the disconnection.

The patentees here claim to have devised a safety joint embodying this general principle which was a new and useful improvement over the prior art and which was the product of inventive genius rather than of mere skilled workmanship. They also contend that their device was wilfully copied by the alleged infringer who obtained knowledge of it before it was submitted to the patent office by devious methods involving a confidential relationship. The trial court found for the patentees on these issues as well as on the matter of infringement.

The appellant says the patent is void for want of invention and also because the patentees themselves described it publicly more than a year before filing their application by inserting a picture and description of it in a catalogue.[1] They also deny infringement.

This is a hard fought, even a bitterly fought, suit in a crowded art. The circumstances under which the trial court, with ample basis in the record, found the appellant took advantage of the patentees' design and skill, not unnaturally resulted in bitter feelings between the parties. Much of the briefs is devoted to charges of bad faith and recriminations between counsel. The parties have thus made it more difficult than usual for the court to sift out the real issues from the assertions and counter-assertions of overstatement by the parties.

■ Were we to determine this case solely as one between the parties, overlooking the essential fact that in patent litigation there is a public interest to be served, Long v. Arkansas Foundry Co., 8 Cir., 247 F.2d 366; Hycon Manufacturing Co. v. H. Koch & Sons, 9 Cir., 219 F.2d 353; we might be constrained to affirm the decision of the trial court. For in substantially every essential particular the court could find that appellants have taken positions somewhat contradictory to that in which they are now cast. The court found that appellants caused application for a patent to be made on this same device after learning of it from patentees; that they did not consider the prior catalogue publication sufficient disclosure to defeat their claim; they solemnly claimed that what they now say is not invention was then, in their opinion, patentable.

■ To the extent that such prior inconsistent conduct is relevant to issues existing solely between the parties, it gives strong support to fact findings of the trial court. Such conduct is, of course, important evidence in attacking the testimony of such an inconsistent actor himself. Where, however, the court is faced with the problem of deciding whether the requirements of the statute have been met for the granting of a patent, the conduct of the parties to the particular litigation cannot control.

Principal reliance is placed by appellants, in attacking the validity of the

---

1. This would be a bar to the issue of a patent under 35 U.S.C.A. § 102, which prohibits the issuance if: * * *

"(b) the invention was patented or described in a printed publication in this or a foreign country * * * more than one year prior to the date of the application for patent in the United States."

Section 103 further provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this article, if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

patent, on three patents which do not appear to have been considered by the patent office in the course of the proceedings there.[2] These three patents have been put in tangible form for the purpose of this litigation in that working models of them are before us.

■ We have carefully studied the contentions of appellees as to the manner in which they claim the patented device meets the need for a safety joint in a better or more economical Waggener #2 (Waggener #1 was before the patent office). We have also carefully considered the answer to these contentions by appellants. Moreover, we have examined and re-examined the models themselves. We have activated the disengaging mechanisms. We understand fully, both from the testimony in the record, from the contentions of the parties and from working the devices themselves what it is that they accomplish. With this understanding, we are clearly of the view that claims 5–11 of the patent in issue do not disclose any invention.

It is true that we have said that "an improvement combination is patentable even though its constituent elements are singly revealed by the prior art, where * * * it produces an old result in a cheaper and otherwise more advantageous way." Jeoffroy Mfg. Co., Inc., v. Graham, 5 Cir., 219 F.2d 511, 519. However, to be patentable, the combination of such known elements must involve something more than the skill of a trained mechanic. See Fluor Corp. v. Gulf Interstate Gas Co., 5 Cir., 259 F.2d 405, 408.

It is true that no one of the three mentioned patents combines all the features of the patentees' tool, but together they embody all the essential features of it except such as for instance, as the use of shear pins as a locking device.

Moreover, the patentees fail to make clear to us what advantage inheres in each of the differences between the device in suit and the one covered by the prior patents. For instance, it is not shown that the use of two sealing rings rather than one is of significance, nor is it shown that it is essential or even markedly valuable for the parts to be "interlocked," when assembled, so long as they are prevented from premature disengagement by the arrangement of the grooves and lugs (as is the case with Waggener).

■ Even though we could find that there was true invention in the development of this safety joint, we would also have to conclude that a patent could not issue because of the publication by patentees some eighteen months prior to filing this application for a patent. They published in the Composite Catalogue Oil Field and Pipeline Equipment in October, 1949, a line drawing of their safety joint accompanied by a description which it seems clear to us brings it within the language of 35 U.S.C.A. § 102 and § 103, supra.

■■ Of course, in patent cases, as in all other cases tried by the court without a jury, disputed fact issues must stand as resolved by the trial court unless found to be clearly erroneous, F.R. Civ.P. Rule 52(a), 28 U.S.C.A. However, the question whether a particular patent meets the standard of invention is a fully reviewable question of law. Little Mule Corp. v. Lug All Co., 5 Cir., 254 F.2d 268, 276; Fritz W. Glitsch & Sons v. Wyatt Metal & Boiler Works, 5 Cir., 224 F.2d 331, 335. Giving full effect to these findings of the able trial judge, which are truly findings of fact and not of law, we must nevertheless conclude that the device in suit could not properly be patented. We thus do not come to the question of infringement.

The judgment of the trial court must be Reversed and the case Remanded for the entry of a judgment for the defendants.

---

2. The application was first rejected by the examiner but was granted an appeal to the Board of Appeals.