KENNEDY et al. v. TRIMBLE NURSERY-LAND FURNITURE, Inc.

No. 37.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, Merton W. Sage, and Albert J. Clark, all of New York City, of counsel), for appellants.

Harold E. Stonebraker and Kenneth B. Keating, both of Rochester, N. Y., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This suit is on three patents relating to an infant's bathing apparatus—No. 1,510,-596, patented October 7, 1924 on an application filed March 6, 1920, claims 11 and 12 are in suit; No. 1,767,800, patented June 24, 1930 on an application filed July 25, 1921, claims 7 and 8 are in suit; and No. 1,693,389, patented November 27, 1928 on an application filed July 23, 1923, claim 5 is in suit.

Patent No. 1,510,596 covers the combination of flexible bath tub having a collapsible or folding support, and a dressing table which may assume a position overlying the tub for dressing and undressing the infant, and may be swung to a vertical out-of-the-way position when the infant is not being bathed in the tub. No. 1,767,800 extends the combination to include a screen guard arranged along one side of the table which may be erected to protect the infant when the table is in use, and folded when it is not in use. No. 1,-693,389 provides a screen carried by the support and having racks for the reception of appliances.

In the first of these the inventor had in mind the combined infant's bath tub and dressing table in which the tub is expansible to set-up relation and when so set up, the dressing table can be swung on a horizontal axis along one side of the tub to an operative position overlying the tub for undressing the infant. The dressing table is next swung to its verticle position (inoperative and out of the way) and the tub employed to bathe the infant. After bathing, the dressing table is again swung to its horizontal position overlying the table for dressing the infant. This combination is so constructed that the tub and the dressing table can be folded or collapsed into compact form so as to take up little space when it is not in use.

The Kennedy brothers developed and exploited this invention. They manufactured a combination bath tub and dressing table under a trade mark "Bathinette". After manufacturing for some time, their corporation became financially involved but a new enterprise was later financed by the royalties received for use of the patent under a license to the Woodstock Company and bank loans. The Woodstock Company failed and payment of royalties ceased, whereupon on March 30, 1923, an agreement was made between Kennedy Bros.' Corp. and appellee to take over and fulfill all current and future orders for the baby bath tubs. By a supplemental agreement of May 17, 1923, appellee purchased all the corporation's assets, provided for a compromise with its creditors and it · was agreed that the indebtedness of Kennedy Brothers for loans from banks would be paid out of royalties until the indebtedness to the banks was liquidated. Title to pending applications for patents was vested in the appellants and the appellee was granted exclusive licenses under the applications. Appellee thus acquired the business and exclusive licenses under the Kennedy patent applications.

For seven years appellee had every right, except the legal title, to the inventions of the patents in suit and publicly asserted that right and interest and threatened to proceed against infringers. During these years appellants were obligated not to engage directly or indirectly in the manufacture or sale of infant's bath tubs. All royalties were paid by appellee to the banks in liquidation of the indebtedness incurred by appellants' corporation in initially developing and exploiting these inventions.

On July 11, 1930, appellee elected to cancel the license agreement. Thereafter appellants resumed the manufacture and sale of the baby bathing devices employing the inventions of the patents in suit. After terminating the license, the appellee continued to make and sell under the trade mark "Kiddie Bath", infant's bathing devices which it is claimed infringe the patents in suit.

Two types of baths were manufactured under patent No. 1,510,596, the cabinet and the cross leg models. The cabinet model was first to be manufactured but was found to be expensive. The cross leg model was cheaper and it was this model which gained commercial success in the market. The cabinet model was discontinued in the Spring of 1923 before the appellee took over the business. Both models embodied the same characteristic features of patentable novelty. Both were combinations of a flexible bath tub having a collapsible or folding support with a dress-

ing table having an operative position overlying the bath tub and adapted to swing on an axis along one side of the tub to an out of the way inoperative vertical position. The original cabinet model was described in the application of March 6, 1920, resulting in the patent of which claims 11 and 12 are here in suit. The generic concept of this combination is stated in these claims as (1) a collapsible support embodying members adapted to be extended from each other; (2) a collapsible bath tub of flexible material supported thereby and adapted to fold between the members when collapsed, and (3) a dressing table having a pivotal connection with the support to fold on an axis lying along one side of the tub and in a direction transverse to its own plane to a vertical position or to overlie the tub when extended in a horizontal operative position.

■ The court below said that when the patent was granted, the drawings and specifications covered a bath cabinet and the claims must be construed in that light, and said that no finding that the concept of a bath cabinet had been abandoned during the progress of the application was warranted. The rule is well established that while an invention must describe what the inventor believes to be his best mode in which his inventive idea may be embodied, his patent monopoly is not confined to that. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418, 28 S.Ct. 748, 52 L.Ed. 1122; Independent Coal Tar Co. v. Cressy Contracting Co., 1 Cir., 260 F. 463, 472. We have said that a court "should never interpret a positively recited generic expression as limited to the precise instrumentality disclosed by the patent, except where such narrow interpretation is necessary to distinguish the claim from the prior art." International Banding Machine Co. v. American Bander Co., 2 Cir., 9 F.2d 606, 608. Where a patent contains both a broad and a narrow claim and the suit is brought on the broad claim, the court will not read into the broad claim a limitation not therein expressed but which is expressed in the narrower claim; to do so would be changing the contract between the public and the patentee. Electric Machinery Mfg. Co. v. General Elec. Co., 2 Cir., 88 F.2d 11, 16; O'Rourke Engineering Const. Co. v. McMullen, 2 Cir., 160 F. 933, 939. By thus reading claims 11 and 12 here, the court below reduced them to the same scope as the other claims and we think erred in the application of these rules.

■ The court held that the patent failed to rise to the dignity of invention over the patents granted to Hagstrom No. 1,327,-866 and to Park No. 1,115,968. The cabinet construction in combination with the folding bath tub and dressing table are claimed in claims 1 to 10 inclusive; claims 11 and 12 are granted more broadly for the combination of the collapsible support with the collapsible bath tub supported thereby and adapted to fold between the members when collapsed, and a dressing table having a pivotal connection with the support to fold on an axis lying along one side of the tub so that it might be brought into either an extended position overlying the tub when it serves as a dressing table, or into a vertical out of the way position. This combination is not disclosed in the Hagstrom or Park patents. Hagstrom's patent discloses a flexible tub carried by a collapsible support, a roller mounted to one side of the support and a curtain wound on the roller is used to stretch across the tub by unwinding the roller. Of this roller and curtain the patent speaks of a construction similar to the "shade rollers so as to automatically rewind the yielding platform when the free end of the same is released from attachment to the transverse member". This roller curtain yielding platform does not have a pivotal connection with the support to fold on an axis lying along one side of the tub and in a direction transverse to its own plane to a vertical position or to overlie the tub when extended in a horizontal operative position as stated in claim 11. Nor is it "pivoted to swing independently of the tub on an axis extending along one edge of the tub to an inoperative vertical position in the plane of such axis" as referred to in claim 12. As stated in these claims the patentable feature resides in the pivotal connection of the framed dressing table to the support permitting the table to swing or fold on an axis extending along one side of the tub, and in a direction transverse to the plane of the table, to an inoperative vertical position or to overlie the tub in a horizontal operative position. This is embodied in the cross leg construction as well as in the cabinet model. In each model the dressing table is arranged and functions in the same manner and in a manner distinctly different from that of the roller curtain of the Hagstrom patent.

The Park patent discloses a flexible tub supported by a folding frame resembling a card table. One end of the dressing table with folding legs is pivoted on a vertical axis, by a bolt extending through a slot, to one corner of the bath tub frame. This appliance consists of two separate pieces of furniture; one set of legs of the dressing table being replaced by a vertical pivot on the tub section. The dressing table does not fold or swing on an axis lying along one side of the tub and in a direction transverse of its own plane nor can the dressing table be folded or swung to a vertical position. When erected for use the positions of the tub and the dressing table are relatively fixed, as two separate pieces of furniture, and the dressing table cannot be alternately swung from an inoperative vertical position to an operative horizontal position overlying the tub as in the patent in suit. The record discloses that these patents made no impression upon the practical art while the bath tub made under the patent in suit was eventually commercially successful.

The difference in structure and function between the Hagstrom and Park appliances and the combined bath tub and dressing table of the patent in suit resulted from inventive thought. This new utility and improvement became of practical value and resulted in the sale of approximately half a million bath tubs. Moreover, after cancelling its license the appellee continued manufacturing the folding framed dressing table of the Kennedy patent in preference to the roller curtain arrangement of the Hagstrom patent or the Park device. Claims 11 and 12 are valid claims.

Patent No. 1,767,800 adds to the patent just considered a screen guard disposed to project above the dressing table and at one side thereof when the dressing table is in a horizontal operative position overlying the tub. Its function is to prevent drafts from the rear and to act as a guard preventing the infant, being prepared for a bath, from rolling off on the other side of the table. It was old to provide a screen guard on a tub as shown by the patents to Watts No. 185,372, Fickett No. 354,946 and Kurz No. 639,666. It did not amount to invention to mount a screen guard on a dressing table positioned as indicated. The claims were allowed because the screen guard was made detachable. The screen guard can be used only when the dressing table is in operation at which time the tub is not in use. The collapsible tub and the guard do not depend on each other and have no cooperative relation. The claims of the patent here in suit we hold invalid.

Patent No. 1,693,389 relates to detailed features of the screen guard and its attachment. Claim 5 sued on defines the screen as carried by the support with racks for the reception of bathing appliances disposed upon the face of the screen. The utilization of this screen guard on a folding bath tub and dressing table and racks on the screen did not amount to invention. We hold claim 5 of this patent invalid.

The accused bath tub manufactured by the appellee embodies the features of claims 11 and 12 of patent No. 1,510,596 and we hold that they are infringed.

The decree will therefore be modified so as to hold claims 11 and 12 of this patent valid and infringed; otherwise the decree is affirmed.

Decree modified.