CAMERON IRON WORKS, Inc.,
Appellant,

v.

Robert O. STEKOLL, d/b/a Speed-O-
Valve Co., Appellee.

No. 16050.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1957.

18

James B. Simms, Ralph R. Browning, Houston, Tex., Browning, Simms & Hyer, Houston, Tex., of counsel, for appellant.

Earl Babcock, Duncan, Okl., Lawrence P. Gwin, Bay City, Tex., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

Cameron Iron Works, Inc., the assignee of the Herbert Allen Letters Patent No. 2,606,740 for Improvement in Valves, brought this suit against Robert O. Stekoll, doing business as Speed-O-Valve Co., seeking injunctive relief and damages for an alleged infringement of Claims 1 and 4 of the Allen patent.[1]

The patent in suit relates to an improvement in valves for controlling the flow of abrasive drilling mud under pressures of as much as several thousand pounds per square inch in the course of drilling deep oil and gas wells. More particularly, the invention relates to the form of the sealing means adapted to seal against the closure member of the valve when the latter is closed. The invention has as its principal object the provision of a valve having a fluid pressure actuated sealing means which will not tend to tear off or be blown past the valve closure member while the gate is being opened or closed. In the complaint it was alleged that the defendant has infringed and is now infringing Claims 1 and 4 of the patent by making, using and vending valves embodying the patented invention, and will continue to do so unless enjoined. In its answer the defendant admitted the issuance of the patent, and denied infringement and the validity of the patent and the claims in suit. With the issues thus joined, a trial on the merits was had and at its end the District Court filed findings of fact and conclusions of law and in conformity therewith entered judgment holding that the Allen Patent was invalid, that there had been no infringement by the defendant, and

1. Claim 1 reads as follows: "1. In a valve structure, a housing having a flow passage therethrough and a chamber for a valve closure member intersecting said passage, a valve closure member in said chamber and a sealing ring of relatively soft yieldable material surrounding said passage and carried by said housing on each side of said chamber, said rings each having flexible fluid pressure actuated lips remote from and extending away from said passage, said lips having surfaces in communication with the interior of the body so that they are adapted when on the downstream side of the closure member to be forced by the upstream pressure into sealing engagement with said closure member."

Claim 4 reads as follows: "4. In a valve having a body with a passage therethrough and a movable valve member to control the passage, a rigid part carried by the body, downstream of the valve member, with an opening therethrough providing a portion of the body passage, said part having an edge conforming with a confronting surface of the valve member when in closed position, said valve member mounted so as to have its said confronting surface move relative to said edge of the part when the valve member is shifted to open and close the valve, said part mounted to provide a channel between it and the body, said channel opening into the interior of the body, a resilient lip type seal element within the channel having one lip extending away from said body passage and along the confronting surface of said valve member outwardly of said rigid part when the valve member is in closed position and having its surface laterally remote from said confronting surface in communication with the interior of the body to thereby be adapted to be engaged by the valve member when in closed position to seal between the valve member and the part."

that the complaint should be dismissed. From this judgment plaintiff appeals.

In view of the fact that the trial court's judgment that the patent was invalid would dispose of the matter, if correct, we direct our attention first to this issue. The Allen patent shows several forms of the invention as embodied in a gate valve structure and a plug type valve structure, respectively, all illustrative of the type of seal constituting the invention covered by the claims. However, and inasmuch as the accused Stekoll valve is a plug valve, we shall confine our discussion to the plug valve shown in the Allen patent. This plug valve embodies the four basic elements which are common to such valves: a conventional *housing* [2] having a flow passage therethrough which connects the pipes leading to and from the valve; a *chamber* in which is located the movable valve closure member; a *movable valve closure member,* usually called a plug, with a transverse bore which shuts off the flow when turned at right angles to the flow passage; and a *sealing element,* or gasket, to prevent leakage flow around the plug when it is in closed position. When the valve is in operation and the plug is turned ninety degrees and perpendicular to the flow passage, it interrupts flow through the body and the efficiency of the valve is directly proportionate to the effectiveness of the sealing means under the pressures to which it is subjected.

Claim 1 is an apparatus claim which describes the seal as "a sealing ring of relatively soft yieldable material" surrounding the flow passage and carried by the valve housing on each side of the chamber. The patent drawings indicate that the sealing element consists of two separate rings on the interior of the chamber, one on the inlet or upstream [3] side, and one on the outlet or downstream side of the plug. Each sealing ring "hav-

ing flexible fluid pressure actuated *lips* * * * said *lips* having surfaces * * * so that *they* are adapted when on the downstream side of the closure member to be forced by the upstream pressure into sealing engagement with said closure member," all of which is more specifically set forth in Claim 1.[4] Although the valve is capable of use with either end as the inlet, the seal is always affected against the valve closure member *only* around the valve outlet, that is, on the side of the valve away from the greater pressure, and this is due to the fact that the lip seal is so disposed as to permit upstream pressure to pass into the valve chamber but seal it against flowing out of the valve chamber on the downstream side.

Claim 4 describes the sealing means as "a rigid part carried by the body [or housing], downstream of the valve [closure] member * * * said [rigid] part having an edge conforming with a confronting surface of the valve member when in closed position * * * said [rigid] part mounted to provide a channel between it and the body [or housing], said channel opening into the interior of the body, *a resilient lip type seal element within the channel having one lip* extending away from said body passage and * * * adapted to be engaged by the valve member when in closed position to seal between the valve [closure] member and the [rigid] part." The aforementioned rigid seal ring functions as a support for the flexible seal material, and as closure of the valve is effected, fluid pressure from the upstream side of the valve structure leaks past the sealing ring on the upstream side of the valve and forces the flexible sealing matter on the downstream side into engagement with the valve closure member. The result is that the invention in Claim 4 provides a flexible seal

2. All italics herein ours.

3. In view of the fact that the valve is designed principally for use in deep oil and gas wells in which there are high upstream pressures, the term upstream has been employed throughout to indicate the

side of the valve adjacent to the source of pressure, whereas downstream is used to describe the outlet or opposite side of the valve.

4. See footnote 1.

element which engages and seals against the closure member, together with sufficient rigid support and protection to prevent its being blown out by the pressure which enters the valve chamber from the inlet or upstream side.

Even though gaskets with *lips* which sealed under fluid pressure were well-known in the art prior to the Allen patent, there still existed a problem and that was how to maintain an effective seal which would be actuated by upstream fluid pressure, and at the same time protect the flexible sealing material from damage caused by the valve closure member by reason of the fact that under great pressure such material tended to "bulge" into the housing passage and would be sheared off when the plug turned and latterally slid past the sealing material. Allen's principal objective was to find a solution to this problem and it was with this objective in view that he evolved the novel concept set forth in the patent which was that of arranging the elements of the valve and sealing ring so that as the plug moves from open position towards closed position, no edge of the transverse bore through the plug is required to approach the edge of the sealing material in such a manner as would tend to drag it along with the plug and cut off the edge of the flexible sealing material.

On the issue of validity, the trial court found: that the patent in suit is on a plug valve, that such valves are very well known, and that, any changes in their structure must necessarily be regarded as detailed improvements; that the Allen patent is a mere paper patent, which had never been put into commercial use by the plaintiff; that the patent specifications and drawings disclose a gasket having *lips* to effect the seal; that the purported invention of the patent resides in the use of this gasket the *lips* of which act primarily under the influence of fluid pressure; that gaskets of this type were well known prior to the alleged invention of the Allen patent; and that the prior art patent, such as U. S. Letters Patent to

Pratt, Nos. 477,605 and 477,607, as well as the specifications and file wrapper history of the Allen patent, limit Claims 1 and 4 to the use of a gasket having *lips*. On the basis of these findings the court concluded as a matter of law that the Allen patent involved only mechanical skill rather than invention, that it is entitled only to a very narrow and limited construction, and that it is invalid in that it fails to disclose invention over the prior art. We do not at all agree.

█ The prior art patents cited by the District Court do not disclose a sealing element or ring having any lips or the equivalent of lips and hence do not limit the Allen patent Claims to sealing rings having two lips instead of one. While it is true that the drawings of the patent in suit show only seal members with two lips, it is well-settled that a patent is not to be limited to the preferred embodiments shown in the drawings. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122. Furthermore, it is clear from the specifications that Allen's principal invention lies in the use and arrangement of a sealing ring with a lip which seals against the closure member or plug, as described in Claims 1 and 4, and hence the specifications do not limit these claims to the use of a sealing ring having a second lip sealing against the body. In addition, the Patent Office file wrapper clearly discloses that the claims in suit were not at any time amended as to the number of lips employed.

█ While we recognize the fact that the Allen patent is an improvement patent and hence not entitled to any broad degree of protection, we nevertheless are of the clear opinion that it reveals sufficient indicia of novelty and invention to justify a limited protection. Other factors strongly influencing, and which we think are supportive of our conclusion that the patent is valid, are: (1) the presumption of validity which attends the grant of a patent by the Patent Office; (2) the rule that the bur-

den of establishing invalidity of a patent shall rest on the party asserting it and that any reasonable doubt will be resolved against him, 35 U.S.C. § 282;[5] and (3) the further well-established rule that an improvement combination is patentable even though its constituent elements are singly revealed by the prior art.[6]

We come now to the issue of infringement. The trial court found: that Claims 1 and 4 of the Allen patent, which were alleged to be infringed, either state positively or imply that each gasket is to have *lips* to effect the seal; that the claims in suit do not define the accused Stekoll valve, which uses a gasket to effect a seal, but has only *one lip;* and that the Stekoll valve is not the same in structure, function, or mode of operation as the valve shown, described and claimed in the Allen patent. From these and other findings of fact the trial court concluded as a matter of law that the accused valve is not the equivalent of the valve described and claimed in the Allen patent and does not infringe the patent in suit or any claims thereof.

█ The appellee, citing Graver Tank & Mfg. Co. v. Linde Prod. Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, and the like, urges upon us the rule there expressed that questions of infringement are questions of fact, and therefore in accordance with Rule 52(a) of the Federal Rules of Civil Procedure this Court, 28 U.S.C., should not set aside the findings of the trial court unless "clearly erroneous." We agree with appellee that the question of infringement is usually a question of fact, and that the Supreme Court so declared in the Graver Tank Co. case. But the rule there announced is subject to this important exception, and

that is that where, as here, the facts are undisputed and the case can be determined by a mere comparison of the structures, and extrinsic evidence is not needed for purposes of explanation or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the question of infringement may be determined as a question of law, and that we shall do. United States v. Esnault-Pelterie, 303 U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed 147; Stuart Oxygen Co. v. Josephian, 9 Cir., 162 F.2d 857.

█ It is conceded that the accused valve employs a one-lip resilient flexible sealing element, which acts primarily under the influence of fluid pressure and is adapted when on the downstream side of the plug to be forced by upstream pressure into sealing engagement with the plug or closure member. Appellant vigorously contends, however, that the Court's holding that Claims 1 and 4 are limited by implication to seal elements having *two lips* is contrary to the well-established rule of construction that a broad claim will not be construed to contain limitations expressed in the more narrow claims. This principle of law is, of course, sound. Great Lakes Equipment Co. v. Fluid Systems, Inc., 6 Cir., 217 F.2d 613; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550; Kennedy v. Trimble Nurseryland Furniture, Inc., 2 Cir., 99 F.2d 786. The reason for the rule is that each claim is in theory a separate patent so that no two claims should be so construed as to make them identical. Grayson Heat Control, Ltd. v. Los Angeles Gas Appliance Co., Inc., 9 Cir., 134 F.2d

5. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983; Radio Corp. of America v. Radio Engineering Lab., Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356; Barbed Wire Patent [Washburn & Moen Mfg. Co. v. Beat Em All Barbed Wire Co.], 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed.

154; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017.

6. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 37 S.Ct. 82, 61 L.Ed. 286; Southern States Equip. Corp. v. USCO Power Equip. Corp., 5 Cir., 209 F.2d 111.

478. But this rule is not applicable to Claim 1 for the reason that this claim clearly specifies that the valve embodies sealing *rings, "each* having   *   *   * *lips."* Appellant argues that the language of Claim 1 which modifies the "lips" called for on each of the two sealing rings specifies that the parts termed "lips" are the parts "adapted to be forced   *   *   * into sealing engagement with the closure member," and that these are the same as what was found to be a "lip" on each of Stekoll's rings. We think this is a strained construction which we are not authorized to adopt where, as here, the language of the claim is plain and unambiguous. What is here involved is the application of the doctrine of equivalents and more specifically whether the one-lip sealing element of the accused valve is an equivalent of the "lips" specified in the claim. For answer we deem it sufficient to say that the law gives an inventor a range of equivalents commensurate with the scope of his invention, Continental Paper Bag Co. v. Eastern Paper Bag Co., supra. And as applied to a device which is very well known, and a patent which was never put into commercial use by its owner, the law entitles only a narrow treatment as to range of equivalents. Accordingly, we are of opinion that the trial court properly held that the accused valve which employs but one lip did not infringe Claim 1.

However, we agree with appellant that the rule announced in Great Lakes Equip. Co. v. Fluid Systems, supra, is applicable to Claim 4, which discloses "a lip-type sealing element * * * having *one lip,"* but makes no reference to any other lip. Claim 5, which is not in suit, embodies the "assembly of claim 4 * * * and the seal element has *another lip."* It is apparent that no second or "another" lip is disclosed in Claim 4 and to hold that this limitation existing in Claim 5 and not existing in Claim 4 should be read into the latter claim would violate the established law. Inasmuch as this claim, when read in its normal and natural sense, covers the accused Stekoll valve, without resort to the doctrine of equivalents, and in structure, mode of operation and result the two devices are the same, it follows that the accused valve infringes claim 4 of the Allen patent.

The judgment of the District Court is affirmed in part and to the extent only that it holds Claim 1 of the Allen Patent No. 2,606,740 is not infringed. In all other respects, the judgment appealed from is reversed, and the cause is remanded to the District Court with directions to enter judgment holding that the Allen Patent No. 2,606,740 is valid and that Claim 4 thereof is infringed by the Stekoll valve, and for further proceedings not inconsistent with this opinion. All costs of this appeal are to be taxed against the appellee.

Affirmed in part, reversed in part, and remanded with directions.