**UP–RIGHT, INC., Appellant,**

v.

**SAFWAY PRODUCTS, INC. and R. D.**
Werner Co., Inc., Appellees.

No. 19286.

United States Court of Appeals
Fifth Circuit.

March 29, 1963.

Rehearing Denied May 14, 1963.

E. Hastings Ackley, Dallas, Tex., Oscar
A. Mellin, San Francisco, Cal., Mellin,
Hanscom & Hursh, San Francisco, Cal.,
for appellant.

Paul Carrington, Marvin S. Sloman,
Dallas, Tex., Carrington, Johnson & Ste-
phens, Dallas, Tex., of counsel, for ap-
pellees.

Before BROWN and BELL, Circuit
Judges, and SIMPSON, District Judge.

GRIFFIN B. BELL, Circuit Judge.

Suit for infringement of United States
Letters patent No. 2,438,173 relating to
portable, collapsible scaffolding units was
brought against Safway Products, Inc., a
distributor of the accused Aldek Scaffold.
R. D. Werner Co., Inc., the manufacturer
of the Aldek scaffold, was permitted to
intervene. The charge of infringement
was limited to claims 1 and 2 of the pat-
ent in suit.[1] Two general issues, in-

---

1. Claim 1—"A scaffold unit comprising a
rigid platform section, a rigid supporting
section at each end of the platform sec-
tion, a hinged connection between adjoin-
ing ends of the platform and supporting
sections, a ladder section hingedly con-
nected at one end to the end of one sup-
porting section at the junction between
it and the platform section, and a de-
tachable connection between the other
end of the ladder section and the other

supporting section at the end of the lat-
ter opposite its connection with the plat-
form section."

Claim 2—"Same as claim 1 with the
following additional clause added at the
end thereof:

"* * *, and a brace extending be-
tween the supporting sections and detach-
ably connected thereto at coinciding
points intermediate the end thereof."

validity and infringement, panned out of the prolix pleadings so often prevalent in patent litigation. The issue of infringement involved the subsidiary issue of file wrapper estoppel.

The court, upon reaching its decision, advised counsel for the parties of its views by letter, and this letter was made a part of the judgment. It follows in pertinent part. The reference to the Johnson patent is to the patent in suit.

"Gentlemen:

"Having heard and viewed the evidence presented and studied thoroughly the excellent briefs presented to the court, I have determined that plaintiffs' Johnson patent has not been infringed by the accused Aldek device of Defendant and Intervener. Plaintiffs' patent, a combination patent in a very old and crowded art which embodies no new individual elements, is entitled at most to only a very narrow range of equivalents. The accused device does not fall within this range. The Aldek device is simpler, safer and more efficient in operation, and is substantially and materially different in structure, mode of operation, and result.

"It is therefore unnecessary to decide the issue of the validity of plaintiffs' Johnson patent. * * *"

Thereafter findings of fact, conclusions of law, and final judgment were entered.

The patent in suit covers an integrally connected assemblage of scaffold elements which may be easily erected for use as a tower type scaffold unit, and which may be easily collapsed or folded into a relatively small compact package for transportation or storage. The essential parts are permanently connected together by hinged joints, thus eliminating the loss of parts, and increasing the ease with which the scaffold may be handled and stored. Each unit includes a ladder. The units may be placed when erected, one on top of the other, to reach desired heights.

Appellant, assignee of the patent, was founded to manufacture and distribute scaffolds made to the teachings of the patent. Some 53,000 units have been manufactured and sold for use in construction and maintenance work, and as one piece folding radio tower sections. There was testimony describing the erection of a 350 foot high tower in one day. The United States Government has taken a license under the patent so that they may be manufactured by others for the government. The Army Signal Corps has purchased units valued at more than one million dollars, and they are used in forming towers, including use on the Distant Early Warning System in northern Canada. They are also used by the major telephone companies in the United States. Sufficient units can be loaded on a single truck to erect a 200 foot high tower.

These units are simple in design. They are of open frame or tubular construction. Each consists of a platform section hinged to two end or support sections with a diagonal ladder section hinged at the juncture of the platform and one of the end sections. The design is based on a triangular conception with one end section, the ladder section and the platform section forming the triangle. The other end section supports the corner of the triangle where the ladder is affixed at the juncture of that end section and the platform, and is perpendicular to the platform and parallel to the opposite end section when the unit is in the erected position. The ladder is used for the purpose of ascending to and descending from the platform section. The width of the ladder takes up one half of the width of the supporting ends of the platform section, leaving room for a deck covering the other half of the platform section from which to work. Additional units may be stacked, one upon the other, by fitting the legs of the upper unit into holes provided in the four corners of the end sections of the lower unit. As noted in Footnote 1, the only difference between claims 1 and 2 is the brace between the end sections

added in claim 2. It is not involved in this litigation.

The crux of the infringement controversy lies in the difference between the device made according to the specifics of the patent, and the accused device. It is necessary in order that the unit be foldable and portable that one end of the triangle be detachable. The patent sets out the point of detachment as being where the lower end of the ladder joins the bottom of the end section, i. e., the end side of the triangle. The other corners of the triangle are hingedly connected, as is the end section which is not a side of the triangle, but which, along with the opposite end, supports the platform.

The patent in suit, immediately preceding the claims, provides:

"While we have shown the preferred form of our invention, it is understood that various changes may be made in its construction by those skilled in the art without departing from the spirit of the invention as defined in the appended claims."

The differences between the device of the patent and the accused device are nil for the purposes of this litigation insofar as they appear erected. Such differences as form the issue of infringement are two, one resulting from the other. Rather than having the ladder detachable from the bottom of the end section which forms a side of the triangle, appellees have put the point of detachment where the platform joins the end section of the triangle. The ladder, on their device, is hingedly connected at each end but it occupies the same diagonal position as taught in the patent. This change results in a different folding and unfolding method. In substance, the only change has been to move the point of detachment of the triangle from one corner to another.

The resulting difference in folding and unfolding occurs in two respects; in movement, and in the form of the folded package. The device of the patent in the folded or collapsed position is the thickness of three of the metal tubes forming the framing of the unit. The end which does not form a part of the triangle lies on the bottom of the package with the ladder on top of it, fitting partially into the open part of the platform section which comes next above the ladder, and with the end section which is a part of the triangle resting on top, making the folded package.

It is erected from a folding position, as the erector faces the package, by swinging the end piece which is on top through a one hundred eighty degree arc to the right so that it is again parallel to the ground and an extension of the original package. Next the platform and end section are raised at the joint where the platform hinges to the now extended end section. This in turn commences the forming of a triangle consisting of the end piece, platform and ladder, pulling the outer end of the end section back toward the package until the bottom of the ladder section can be attached to the rung on the bottom of the end section. Finally, the opposite end of the platform is raised until the platform is parallel to the ground and the opposite end section, which is not a side of the triangle and which is on the bottom of the package, swings into place parallel to the other end section. As erected the end pieces are perpendicular to the platform and the ladder is in a diagonal position. This procedure is reversed to collapse and fold the device of the patent.

The accused device in the folded position is the height of four tubes. The end section, which forms a side of the triangle, rests at the top of the folded unit or package. The platform section is next, then the ladder, with the other end section being on the bottom. It is erected by raising the top end section to the right through an arc of forty five degrees; the platform section is then raised until it can be attached to the already raised end section. At this point the basic triangle has been formed consisting of one end section, the platform section and the ladder section. Finally,

the platform section is raised so that it is parallel to the ground. As this is done the remaining end section swings into place, parallel to the other end section and perpendicular to the platform.

The change which results from a selection of a different corner of the triangle as the detachable corner is evidenced by the fact that no member of the accused device moves more than ninety degrees in the folding or unfolding process, while in the device of the patent it is necessary to move the end piece forming the side of the triangle two hundred seventy degrees. However, on examination this is a difference of little distinction.

No evidence was offered as to the difference in time required to erect or fold either of the units, but the trial court did witness a demonstration and concluded that the accused device was simpler, safer and more efficient in operation, and also that it was substantially and materially different in structure, mode of operation, and result from the device of the patent. Coupling this with the finding that the combination patent of appellant pertained to an old and crowded art, embodied no new elements, and was entitled at most to a narrow range of equivalents, the court concluded that there was no infringement. The court concluded that there was no wide interest beyond that of the parties in the validity or invalidity of the patent and did not reach that question. We hold that the court erred on the question of infringement, and in not reaching the question of invalidity.

It has, of course, been held that it is not necessary for the court to rule on validity in an infringement case where a narrow improvement patent is involved and its validity vel non is of no great public importance. Industrial Instrument Corporation v. Foxboro Co., 5 Cir., 1962, 307 F.2d 783; and Stewart-Warner Corporation v. Lone Star Gas Company, 5 Cir., 1952, 195 F.2d 645. But we pointed out in Industrial Instrument Corporation, citing Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644,

that the better practice is to inquire fully into validity. And the question here is important. The facts show a substantial public interest in this patent, and the question of validity also bears heavily on the question of infringement.

We begin with the proposition that an inventor, with respect to his patent, is entitled to a range of equivalents commensurate with the scope of his invention. Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corporation, 5 Cir., 1956, 239 F.2d 339. We are not here dealing with a pioneer patent but considerable improvement in the scaffold art does appear to have resulted from the teachings of this patent. A comparison with the prior art makes this clear. It is true that every element in the scaffold of the patent is old in the art but none had apparently thought of this particular combination or the result that it obtained. The District Court recognized that the patent was entitled to the protection of a limited range of equivalents, but held that the accused device did not fall within the range. We are unable to discern that any range was applied. Finding file wrapper estoppel, and relying on the specific language of the claims, appellants were restricted to the scaffold unit of the patent.

And in reaching our conclusion we proceed under the authority of Cameron Iron Works, Inc. v. Stekoll, 5 Cir., 1952, 242 F.2d 17:

"* * * that where, as here, the facts are undisputed and the case can be determined by a mere comparison of the structures, and extrinsic evidence is not needed for purposes of explanation or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the question of infringement may be determined as a question of law, * * *"

See also Industrial Instrument Corporation v. The Foxboro Co., supra, where it was pointed out that:

"We may reverse free of the clearly erroneous rule where, as is the

case here, the issue revolves around an ultimate fact question as distinguished from subsidiary fact questions, or where mixed questions of law and fact are presented when there is error as to the law. Galena Oaks Corporation v. Scofield, 1954, 5 Cir., 218 F.2d 217. 5 Moore's Federal Practice, 2 Ed., § 52.03(3) p. 2631; Barron and Holtzoff, Wright Ed., Fed. Practice and Procedure, § 1137, p. 560."

The facts of this case meet both tests. The only dispute concerns the ultimate fact question as distinguished from subsidiary facts, and even the subsidiary facts are not in dispute. The prior art needs no explanation and the structures are simple in design. And, under the circumstances, we assume the validity of the patent.

■ The views of the District Court regarding file wrapper estoppel may have been the prime cause of the error on the question of infringement. In the original application, claims 1 and 2 contained, instead of the words "a hinged" and "hingedly" as they now appear, the words "an articulate" and "articulately", respectively. This change or amendment was required to meet the rejection of the claims by the examiner. The term "articulate" was used, according to appellees, in the sense of "consisting of segments united by joints". Appellees urge that appellant is estopped to claim more than what was agreed to in the patent office. They contend that by accepting the substitute terms, the restriction of the claim is not only to "hinged" connections instead of "articulate" connections but that the "hinged" connections as distinguished from the "detachable" connection must be located as the claims set out. This would leave appellees, as they did, free to choose another corner of the triangle for the detachable connection, but this connection fails. The location of the detachable connection was in no wise changed by the new language. It continued to be located where it was originally stated to be located.

The substitution of hinged connections for articulate connections at the non-detachable points in no way indicates an abandonment of the principle of a detachable corner, or a restriction as to its location. There was simply no basis for file wrapper estoppel. There was no attempt to recapture, revive, or restore something that had been abandoned or surrendered in the patent office. Cf. Edward Valves, Inc. v. Cameron Iron Works, Inc., 5 Cir., 1961, 286 F.2d 933.

■ Having eliminated the question of file wrapper estoppel from the case, we apply the doctrine of equivalents to determine the question of infringement. And in so doing, we adhere to the established rule that the patent was not limited to the preferred embodiments shown in the claims or drawings. See Continental Paper Bag Company v. Eastern Paper Bag Co., 1908, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Thurber Corporation v. Fairchild Motor Corporation, 5 Cir., 1959, 269 F.2d 841; Bryan v. Sid W. Richardson, Inc., 5 Cir., 1958, 254 F.2d 191; and Cameron Iron Works v. Stekoll, supra. We approach this question on the assumption of validity, and without making any determination that the patent is to be accorded anything more than a narrow range of equivalents.

■■ The law is that substance is not to be subordinated to form so as to deprive one of the benefit of his invention. And it is settled that if the accused device performs substantially the same function in substantially the same way to obtain substantially the same result, it infringes. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Bryan v. Sid W. Richardson, Inc., supra; and Industrial Instrument Corporation v. Foxboro Corporation, supra.

The accused device is not only identical in appearance to the device made from the patent, but it performs the same function and obtains the same result in substantially the same way. It differs in structure only by having the detachable

corner of the triangle at one corner of the triangle rather than at another. The evidence was clear from a courtroom demonstration, indeed undisputed; that the accused device was operable, when the detachable corner of it was moved to the corner taught by the patent. The evidence was also clear that the device of the patent was operable when its detachable corner was moved to the corner used on the accused device. Either, with the change, could be used commercially with minor mechanical adjustments.

■ The mode of operation, i. e., folding and unfolding, differs in the manner and degree heretofore described, and this difference results entirely from the selection of a different detachable corner. It results in a simpler folding and unfolding procedure, and no doubt a somewhat safer procedure than that of the device of the patent. All movement of the parts of the accused device takes place within the perimeter of the unit, whereas one end of the device of the patent in the folding and unfolding procedure protrudes its full length beyond the perimeter of the device of the patent. We hold that this, however, is not such substantiality of difference in the mode of operation as to be without the range of even the narrow equivalents which we accord this combination patent. The accused device under the doctrine of equivalents clearly infringed the claims of the patent in issue, and we reverse in this respect.

We remand the case for a determination of validity.[2] If the patent was or is in fact valid, it nevertheless would have little, if any, value if such a minor change as was made in the accused device could avoid infringement. A finding of validity would have posed the question in the District Court of the worth of the patent in the light of the alleged infringement.

Reversed and remanded for further proceedings not inconsistent herewith.

2. The patent in suit was held valid and infringed in Beatty Safway Scaffold Co. v. Up-Right, Inc., 9 Cir., 1962, 306 F.2d 626, cert. den., 83 S.Ct. 881. The accused device there was no different in form from the accused device here. Of course, it was not the same device and defense counsel here are different. There was apparently no showing or finding there that the accused device was safer or more efficient but both are inherent in any examination of a device such as that accused.