Alva G. BLANCHARD, dba Inferno Company, Plaintiff,

v.

TEXSTEAM CORPORATION, a corporation, and Otto Schoenfeld, dba Texsteam Company, Defendants.

Civ. A. No. 9502.

United States District Court
S. D. Texas,
Houston Division.

May 19, 1964.

Hayden & Pravel (Jack W. Hayden), Houston, Tex., for plaintiff.

Vinson, Elkins, Weems & Searls (J. Vincent Martin, M. H. Gay), Houston, Tex., for Texsteam Corporation.

Butler, Binion, Rice & Cook (Ned L. Conley), Houston, Tex., for Otto Schoenfeld.

INGRAHAM, District Judge.

### FINDINGS OF FACT

1. Plaintiff Alva G. Blanchard is an individual residing in Shreveport, Louisiana, and has owned the entire right, title, and interest in and to United States Letters Patent No. 2,212,997 since it is-

sued on August 27, 1940 upon an application of Alva G. Blanchard and Ollie L. Mulloy filed September 11, 1939 and has owned all rights of recovery for infringement of said patent and all rights of recovery for breach of contract.

2. Defendant Otto Schoenfeld is an individual residing in Houston, Harris County, Texas, and was a partner in Texsteam Company from about 1943 until Defendant Texsteam Corporation, a Texas Corporation, was formed on or about October 31, 1946.

3. Defendant Otto Schoenfeld was a managing partner in Texsteam Company until the partnership was converted into the corporate Defendant, Texsteam Corporation, and thereafter until approximately May 1949 he was one of the managing officers and a director of Defendant Texsteam Corporation. Mr. Schoenfeld and one John Sheesley were the owners of the partnership Texsteam Company, and they were the owners of all the stock of Texsteam Corporation when it was formed.

4. They remained stockholders until on or about January 15, 1953; they were conferred with relating to the affairs of Texsteam, and their advice relied upon in some instances at least until December 11, 1951.

Defendant Otto Schoenfeld and his partner John M. Sheesley each transferred to the Defendant Texsteam Corporation upon its formation all of the business and contracts of the partnership Texsteam Company.

5. Defendants Otto Schoenfeld and Texsteam Company received notice of infringement of the patent in suit by letter dated August 30, 1946 shortly before the partnership was converted into the corporate Defendant Texsteam Corporation. The management of Texsteam Corporation at incorporation in October 1946 was the same as the partnership, Texsteam Company, and therefore Texsteam Corporation, upon its formation in October 1946, had received notice of infringement of the patent by the letter of August 30, 1946 and had knowledge of the letter of September 3, 1946 to Mr. Blanchard.

6. The patent in suit relates to an improvement in a safety valve for release of gaseous fluids from within pressure vessels. More particularly, as shown in the patent drawing and specification, the invention relates to a safety valve of the top outlet type where the main stream of fluid is out the top of the valve and around the exposed spring which normally maintains the valve closed. One of the objects of the invention is to protect the closure spring from the vapors and the high temperatures of the vapors.

7. Safety valves of the general type to which the patent in suit relates may be divided into two main classes.

(a) side outlet, so called because the main flow of steam is discharged laterally out of the valve and away from the spring which normally maintains the valve closed; and

(b) top outlet, wherein the main flow of steam is directed out the top of the valve and around the spring which normally maintains it closed.

8. The evidence further shows that the top outlet valve can be further divided into:

(1) nonexposed spring type wherein the spring is enclosed in a housing and is not available for visual inspection; and

(2) exposed spring type wherein the spring is exposed to visual inspection in order to determine if the coils of the spring are abutted against each other and therefore indicate whether or not the valve is functional.

9. The problem of keeping vapors, such as steam, away from the spring in a safety valve had long been of great concern to avoid corrosion, spring fatigue, and improper valve function, and these problems are accentuated in a top outlet safety valve because the main stream of steam is discharged from the valve in a manner so that it has more opportunity to create problems.

10. The evidence shows that steam safety valves are rated by capacity and that the valve preferably is of a form:

(1) so as not to cause any restriction in the discharge of the steam and thereby create a back pressure which would reduce the capacity of the valve;

(2) support the exposed spring and other valve structure to cooperate in accomplishing (1) above; and

(3) discharge the escaping vapors outwardly of the support structure and deflect it in a manner so as not to affect the rated valve capacity while simultaneously directing the vapors and heat of the vapors away from the spring.

11. The patent in suit discloses an exposed spring, top outlet safety valve combination that overcomes the problems mentioned in 8 above and accomplishes the desired functions mentioned in 9 and 10 above. Claim 3 in suit recites:

"3. In a top outlet safety valve the combination of an upwardly opening valve having a stem thereon, a spring yieldingly urging the valve against its seat, a cage surrounding said spring, said cage having upwardly extending ribs so that escaping fluid may pass outwardly of the cage, and an inverted conical deflector supported by the ribs and interposed between the valve and spring."

Thus, the steam is guided upwardly but outwardly from the valve spring.

12. Combination claim 3 defines the deflector as "conical" and as "supported by the ribs", and Plaintiff contends that these two terms should be construed to include the valve structure of Defendants. The Defendants' valve, very like that of Plaintiff, uses a deflector that is not identical in shape to Plaintiff's and mounts the deflector to move with the valve stem. The Defendants contend that "conical" should not be construed broadly enough to include their deflector and argue that their deflector is not "supported by the ribs". Further, Defendants contend that if claim 3 be construed to cover its valve structure, the claim is anticipated by the prior art. However, Defendants' nominal variations do not avoid infringement of claim 3 of the patent in suit.

13. The prior art shows a number of safety valves; however, the prior art does not disclose the combination in a top outlet safety valve of an open cage formed with ribs and an inverted conical deflector supported by the ribs so that the spring in the cage is exposed and the steam is deflected therefrom encompassed by claim 3 of the patent in suit, and the evidence supports Plaintiff's position that this combination accomplishes the following new and useful improved results:

(1) The steam is ejected from the valve in a manner so as not to cause any restriction in the discharge of the steam and thereby create a back pressure which would reduce the capacity of the valve;

(2) The valve spring and other valve structure are supported to cooperate in accomplishing (1) above; and

(3) The escaping fluid is discharged outwardly of the support structure and deflected in a manner so as to not cause any back pressure in the valve while simultaneously keeping the steam away from the spring.

All the elements cooperate in an improved manner and were combined through the exercise of invention. The invention involved in such combination of claim 3 of the patent in suit was not obvious to one having ordinary skill in the art at the time the invention was made. This is confirmed by the fact that the Defendants' predecessor in business was started for the manufacture and sale of safety valves after the invention of the patent in suit, but even at that late date, the invention of the patent in suit was not obvious to them as indicated by the fact that they did not adopt the infringing construction until several years after the Blanchard et al. patent in suit issued.

14. The Gentzel Patent No. 2,278,437 and the Fritch Patent No. 1,221,719 are side outlet, not top outlet valves, and

therefore, the main vapor flow is never discharged upwardly around the spring as in the patent in suit. The Darling Patent No. 1,551,547 and Crosby Patent No. 306,386 are top outlet valves, but the spring of each is enclosed in a housing. The Turnbull Patent No. 4017 does not mention the use of a deflector. The steam discharges in a 360° circle, and it is a modified side outlet valve. To this extent, the prior art patents are not designed, nor adapted, nor actually used to perform the functions of combination claim 3 of the patent in suit.

15. The patent in suit is a combination patent and hence not entitled to any broad degree of protection; however, it does reveal sufficient indicia of novelty and invention to justify protection against the basically similar structure of Defendants.

16. The drawing of the patent in suit shows the deflector as being integral with the ribs which are part of the cage; however, after mature consideration, the Court resolves any doubts on the issue of infringement in favor of Plaintiff Blanchard and finds that while Defendants' deflector is not identical in shape to the patent in suit, it is equivalent under the rule in Cameron Iron Works v. Stekoll, 242 F.2d 17 (CA 5, 1957), and although Defendants' deflector is carried on the stem and movable therewith, the stem of Defendants' valve is actually supported by the ribs which are part of the cage so that Defendants' deflector in practical effect is supported by the ribs as stated in claim 3. Also, claims 1 and 2 of the patent in suit define the deflector as "integral" with the cage, whereas claim 3 (the only claim in suit) merely defines the deflector as "supported by the ribs" which are part of the cage, and there is no reason to construe claim 3 as to make it identical in this regard with claims 1 and 2. In addition, the Patent Office file wrapper clearly discloses that claim 3 was not at any time amended so as to restrict claim 3 in the manner urged by Defendants.

17. Defendant Schoenfeld on behalf of Texsteam Company had given Plaintiff Blanchard a letter on September 3, 1946 stating that he would not use the deflector in their safety valves. I think the evidence shows some bad faith on the part of Defendants in this case. The exchange of letters and evidence indicates that Plaintiff Blanchard was deceived and lulled into a false sense of security. Since Blanchard and Schoenfeld had exchanged letters and had been in contact, there is some presumption that a party acts in good faith, and Schoenfeld did not so act since he failed to advise Blanchard when he went back to making the safety valves with deflectors.

18. Schoenfeld and Blanchard were not strangers and had been in contact with each other. One Andrew Johnson, a former employee of Blanchard, Otto Schoenfeld, and one John M. Sheesley formed a corporation called "Texsteam Corporation" in the early 1940's and started selling the so-called Johnson valve, which was a copy of another valve of Mr. Blanchard. Mr. Blanchard advised "Texsteam Corporation" of infringement of this earlier patent belonging to him. "Texsteam Corporation" orally agreed to stop infringing and changed its valve construction so as not to infringe. This earlier Texsteam Corporation ceased to exist about 1943.

19. From 1943 until October 31, 1946, Otto Schoenfeld and John M. Sheesley operated as a partnership called "Texsteam Company" and were so operating when Mr. Blanchard visited with Mr. Schoenfeld in Houston. Upon his return to Shreveport, he wrote the following letter dated August 30, 1946:

"Dear Sir:

"This will confirm our conversation of a few days ago.

"We have had reports to the effect that your company was making a top outlet exposed spring safety valve that had a deflector to protect the spring from escaping steam.

"We have examined the cross section of your series 55–T safety valve as shown in your literature on the

valve and we hereby notify you that we consider this valve to be an infringement of our Patent No. 2,212,-997 a copy of which we herewith inclose.

"More specifically we consider claims 3 and 4 to be infringed. You will note that in these two claims the conical deflector is not specified as 'integral with the ribs' as in the first two claims—but is, 'supported by the ribs'. Therefore, since your deflector is supported—even though indirectly—by the ribs, and all other elements are present, we believe there is a clear infringement.

"If you intend to discontinue this design at once as you advised—we will waive any damage we may have sustained by the infringement.

"In our conversation we advised that if you did abandon the design that it would not be necessary to answer this notification—but on second thought to keep the record straight, we would like to have an answer either way.

"In other words we are waiving any damage the infringement may have caused us to date—providing you advise us that it is discontinued now.

"If you intend to continue using the idea though and do not believe there is an infringement—we would appreciate hearing from you. If you convince us—the matter is ended.

"If we do not hear from you though within 30 days we will take such steps as seem advisable to protect our interests.

"Thanking you for the courteous interview and hoping to hear from you soon, we are  *  *  * "

20. Mr. Blanchard received the letter of September 3, 1946 in which Schoenfeld represented certain facts to Blanchard as clearly shown in said letter, Plaintiff's Exhibit No. 3. Said letter states:

"Gentlemen:

"As of this date, we propose to discontinue the use of a deflector on our safety valves. Consequently, there will be no need for our opinion as to the validity of your claim of infringement in your letter of August 30, 1946.

"As I mentioned before, I will remove deflectors from valves which are sent in for repair or any other adjustment."

21. Blanchard relied and acted upon the representations of Schoenfeld and Texsteam Company contained in the letter of September 3, 1946. The letters constituted a contract between Plaintiff and Defendant Otto Schoenfeld dba Texsteam Company. Despite their representations to Blanchard, Defendants did not give notice to Blanchard of the resumption of infringement of the Blanchard patent by manufacture and sale of the valve here charged with infringement.

22. In addition to the action for patent infringement, Plaintiff Blanchard is entitled to damages for the breach of Defendants of the contractual relationship between the parties arising from the exchange of said letters.

23. Defendants, relying on the defense of laches and limitations, urge that Plaintiff Blanchard knew or should have known of the resumption of manufacture by Defendants of the valve here charged with infringement; Schoenfeld and Blanchard had been in contact and exchanged letters on the subject, and there is some presumption of good faith; in view of the representations of the letter of Schoenfeld and the prior relation of the parties, these parties were not strangers and in view of Mr. Schoenfeld's failure to notify Mr. Blanchard of their resumption of manufacture, if there is any lack of good faith, I think it must be found against Mr. Schoenfeld.

24. As to Schoenfeld's assignee, it could have protected itself against the contingency by making inquiry, and I think it stands in the same position as

Schoenfeld, and I think it will have to look to him for any loss or damage it may sustain.

25. Plaintiff Blanchard testified that he did not know of the infringement until he saw the Defendant Texsteam Corporation valve at Harvey, Louisiana; the valve identified as Plaintiff's Exhibit 7 was purchased at Houston, Texas, from Defendant Texsteam Corporation; *three weeks later* in January 1956, the present suit was filed, and I accept that testimony.

26. Plaintiff Blanchard has enjoyed commercial success with his improvement valve. The Defendants' valve as represented by Plaintiff's Exhibit 7 and any substantial equivalent thereof, constitutes substantially the same structure as that of claim 3 of the patent in suit; they function in the same way and provide the same result, and I find they infringe.

27. The facts and evidence in this case constitute an exceptional case as contemplated by 35 U.S.C.A. § 285; the infringement by Defendants has been deliberate and willful with full knowledge of Plaintiff Blanchard's patent.

28. The evidence does not show any actionable fraud by either Defendant at any time.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. While the patent in suit is an improvement patent and not entitled to any broad degree of protection, it reveals sufficient indicia of novelty and invention to justify limited protection. Cameron Iron Works v. Stekoll, 242 F.2d 17 (CA 5, 1957); Edward Valves, Inc. v. Cameron Iron Works, 286 F.2d 933 (CA 5, 1961) cert. den., 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 34; Duo-Flex Corporation v. Building Service Company, 322 F.2d 94 (CA 5, 1963).

3. A patent is presumed valid and an improvement combination may be patentable even though its constituent elements are singly revealed by the prior art. Cameron Iron Works v. Stekoll, supra, and cases cited at footnote 6 therein.

4. Claim 3 of the Alva G. Blanchard and Ollie L. Mulloy Patent No. 2,212,997 complies with the patent statutes, is not anticipated by the prior art, and is valid.

5. Claim 3 in suit which calls for the deflector to be "supported by the ribs" which are part of the cage should not be construed to mean integral since a broad claim will not be construed to contain limitations expressed in the more narrow claims. Cameron Iron Works v. Stekoll, supra.

6. Under Title 35 U.S.Code § 282, the burden of establishing invalidity of a patent shall rest on the party asserting it, and any reasonable doubt shall be resolved against him. Cameron Iron Works v. Stekoll, supra.

7. The proceedings in the Patent Office by reason of which the patent in suit issued and the prior art before the Court do not estop Plaintiff Blanchard from asserting a scope for claim 3 to encompass Defendants' valves herein identified.

8. Defendants have had actual knowledge of said patent since August 30, 1946 as required by 35 U.S.C.A. § 287.

9. Defendants have infringed claim 3 of the patent in suit by causing to be made and sold valves identified as Plaintiff's Exhibit 7 and its substantial equivalent.

10. Plaintiff is not barred by laches since suit was instituted promptly upon learning of Defendants' resumption of its infringing activities. Shaffer et al. v. Rector Well Equipment Co., Inc., 155 F.2d 344 (CA 5, 1946); Amalgamated Dental Company et al. v. Lang Dental Mfg. Co., 200 F.Supp. 814 (D.C.N.D. Ill.1961); Wortendyke v. White, Federal Case No. 18,050.

11. Plaintiff is not barred by the Texas Statute of Limitations on its action for breach of contract. Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197, Texas Supreme

Court 1957; Al Parker Securities Co. v. Owen, 1 S.W.2d 271 (Commission of Appeals 1928); Grace v. Parker, 337 S.W. 2d 518 (Tex.Civ.App.1960) writ ref. n. r. e.

12. Plaintiff Blanchard at all times material hereto has owned all right, title, and interest in and to the patent in suit and all claims for damages for infringement thereof as well as the cause of action for breach of contract.

13. Plaintiff Blanchard is entitled to recover damages jointly and severally of said Defendants for patent infringement and for breach of contract. Kansas City, Missouri v. Federal Pacific Electric Co., 310 F.2d 271 (1962) CCA 8, cert. den. 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171. Steinberger Petroleum Corp. v. Whitley, Tex.Civ.App., 105 S.W.2d 727; Lavaca Petroleum Corp. v. Runk, Tex.Civ.App., 111 S.W.2d 1113; Baca et al. v. Weldon, Tex.Civ.App., 230 S.W.2d 552.

14. There is no actionable fraud by either defendant at any time.