445 F.2d 922
 BLACK, SIVALLS & BRYSON, INC., Plaintiff-Appellant and Cross-Appellee,
v.
NATIONAL TANK COMPANY, a division of Combustion Engineering, Inc., a corporation, Defendant-Appellee and Cross-Appellant.
 Nos. 620-70.
 Nos. 621-70.
 United States Court of Appeals, Tenth Circuit.
 August 9, 1971.
 
 Jerry J. Dunlap and C. Clark Dougherty, Jr., Oklahoma City, Okl., Dunlap, Laney, Hessin & Dougherty, Oklahoma City, Okl., on the brief, for plaintiff-appellant and cross-appellee.
 Frank B. Pugsley, Ronald L. Palmer, Houston, Tex., Baker & Botts, Houston, Tex., on the brief, and Arthur L. Wade, Tulsa, Okl., for defendant-appellee and cross-appellant.
 Before SETH, McWILLIAMS and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is a case involving the validity and infringement of a patent in which the trial court granted the defendant's motion for summary judgment. Plaintiff seeks a reversal and remand for trial.
 
 
 2
 Plaintiff-appellant instituted this action in the Western District of Oklahoma alleging ownership of United States Letters Patent No. 2,993,479 entitled "Fluid Heaters" and called the Thurley patent. The complaint sought an injunction and damages for patent infringement and unfair competition.[1] The cause was transferred to the Northern District of Oklahoma and judgment was rendered for the defendant.
 
 
 3
 The defendant-appellee filed an answer denying validity and infringement and a counterclaim seeking a declaratory judgment that the Thurley patent was invalid and not infringed.
 
 
 4
 Following limited discovery the defendant-appellee moved for summary judgment that its National C.H.F. heater, the accused device, "does not infringe the patent in question as a matter of law and, further, that the Thurley patent is invalid as a matter of law."
 
 
 5
 The following papers were submitted in support of the motion:
 
 
 6
 1. Three discovery depositions of plaintiff's witnesses taken by defendant.
 
 
 7
 2. The construction drawings of the C.H.F. heater.
 
 
 8
 3. The Burrus patent (this is the defendant's patent, there being some contention on the part of defendant that the accused device is in accordance with this patent which was issued subsequent to the patent in suit).
 
 
 9
 4. The Thurley patent (patent in suit) together with the file wrapper.
 
 
 10
 5. The prior art patents considered and referred to by the examiner in considering plaintiff's application for the patent in suit.
 
 
 11
 The sole inquiry on this appeal is whether there are genuine issues of material fact, whereby the case should have been tried rather than disposed of on a summary basis. We are of the opinion that there are genuine issues of material fact and that the trial court erred in deciding the case on motion for summary judgment.
 
 
 12
 Although there is some suggestion that the plaintiff joined in the submission of the case on summary judgment, there is no indication that it did so. No such motion was filed on behalf of plaintiff, and we are told that plaintiff filed an affidavit of its expert only after it was told that the court intended to dispose of the case on summary judgment.
 
 
 13
 Defendant's motion for summary judgment was granted, findings of fact and conclusions of law being entered in connection therewith. The court found that the accused structure, the C.H.F. heater, did not infringe Claim 1 of the Thurley patent. (The only claim which was in issue at the trial.) It also found that the C.H.F. heater does not utilize a short flame, high intensity heater or a plurality of burners as required by Claim 1 of the patent in suit; that instead it obtains circulation by means of a blower system which is not associated with the burner; that it employs only a single low flame, low velocity burner. The court further found that the doctrine of equivalents was not available because
 
 
 14
 "10. There are no elements in the CHF Heater equivalent to elements in Claim 1 of the Thurley patent which perform substantially the same function in substantially the same way to achieve substantially the same result."
 
 
 15
 The court found further that the limitation of Claim 1 of the Thurley patent to a plurality of high intensity combustion burners was made in response to a rejection by the Patent Office "indicating that the Thurley device was not patentable in view of certain specified prior art patents." The court then concluded that
 
 
 16
 "The doctrine of file wrapper estoppel precludes BS&B from taking a position that the `plurality' of high intensity combustion burners required by Claim 1 of the Thurley patent are equivalent to the single traditional long flame burner used in the National Tank CHF Heaters."
 
 Finally, the court concluded that
 
 17
 "There is no genuine issue as to any material fact concerning the validity of Claim 1 of the Thurley patent. The undisputed facts * * * show that the alleged invention disclosed by Claim 1 of the Thurley patent is obvious. Thus, pursuant to 35 U.S.C. § 103, Claim 1 of the Thurley patent is invalid."
 
 
 18
 The affidavit of McMinn, plaintiff's expert, was excluded from consideration on the ground that it was conclusory; that it lacked facts.
 
 I. THE PATENT IN SUIT
 
 19
 The Thurley patent discloses and claims a heater which is said to be particularly useful in the oil, chemical and other industries for heating various types of fluids. The device comprises a wall structure or housing which forms what the patent calls a "furnace space" which contains a plurality of tubes through which the fluid which is to be heated passes. These tubes are spaced from the wall structure and from each other so as to allow the free flow of gas around the tubes. The third element consists of a plurality of short flame, high intensity combustion burner means having combustion chambers in which substantially complete fuel combustion takes place. The combustion chambers are substantially shielded from the furnace space and positioned adjacent to one surface of the wall structure "defining said furnace space." Claim 1 also requires that the high velocity jets from the high intensity burner means cause circulation of combustion gases around the tubes. The jets are the sole means for transferring heat to said tubes.
 
 
 20
 It would appear that the object which is sought to be achieved is that of uniform circulation of the combustion gases around the tubes through which the liquid to be heated flows. Even heating is sought to be achieved, and excessive oxidization and fouling of the tubes, together with tube failure, is said to be prevented. Complete occupation of the space within the furnace by the combustion gas is said to exclude air and to prevent explosion.
 
 II. THE ACCUSED DEVICE
 
 21
 Judging from the descriptions in the briefs, and in the Burrus patent, the National C.H.F. heater employs a plurality of tubes through which the liquid to be heated flows. The heat source is a single long flame type burner which is mounted alongside the housing. It communicates with an elongated combustion chamber in which gas supplied to the burner is comletely burned and no flame issues from the combustion chamber. Circulation is achieved rather than from high velocity jets (as in the Thurley patent) by means of a blower which is detached from the burner. The heat source would appear to be the combustion gases. Thus, there are structural differences consisting in the main of a single burner rather than more than one together with a different method of circulating the combustion gases.
 
 III. THE INFRINGEMENT QUESTION
 
 22
 Ordinarily, at least, the question of infringement is a question of fact to be resolved by the trier of the facts in the light of all of the evidence.
 
 
 23
 Thus, in McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965), this Court said:
 
 
 24
 The question of infringement is one of fact and, upon review, the trial court's findings thereon will not be set aside unless they are clearly erroneous. Stilz v. United States, 269 U.S. 144. 46 S.Ct. 37, 70 L.Ed. 202; Hahn & Clay v. A. O. Smith Corporation, 5 Cir., 320 F.2d 166, cert. denied, 375 U.S. 944, 84 S.Ct. 351, 11 L.Ed.2d 274. Therefore, our power of review is limited to determining whether, under correct legal standards, the findings of infringement are supported by the record.
 
 In McCullough it was noted that
 
 25
 In determining whether an accused device infringes a valid patent, resort must be had in the first instance to the words of the claims contained in the patent * * *.
 
 
 26
 However, the Court also stated that this is not conclusive since infringement is not a mere matter of words. Rather, the test is whether the accused device and the device covered by the patent do the same work in substantially the same way to accomplish substantially the same result. The Court went on to say:
 
 
 27
 Under the doctrine of equivalents, infringement may exist even though the two devices differ in name, form or shape. Graver Tank Co. v. Linde Air Products Co., supra. Equivalency must be determined against the context of the patent, the prior art and the particular circumstances of the case and complete identity for every purpose and in every respect is not required. Jones v. Bodaness [10 Cir., 189 F.2d 838], supra.
 
 
 28
 A primary or pioneer patent, such as Bender, is to be given a broad and liberal construction and, also, a broad and liberal range of equivalence and it is not to be limited to the precise device and instrumentality disclosed. Mason Corporation v. Halliburton, 10 Cir., 118 F.2d 729; Priebe & Sons Co. v. Hunt, 8 Cir., 188 F.2d 880, cert. dismissed, 342 U.S. 801, 72 S.Ct. 92, 96 L.Ed. 607. A combination patent which constitutes a marked improvement in the art, such as Fearon, is entitled to a substantial range of equivalents.
 
 
 29
 The trial court's finding No. 11 that the file wrapper of the Thurley patent made clear that there was no question of fact as to Claim 1 being limited to a plurality of high intensity combustion burners was a crucial one which laid the groundwork for the court's further finding that the plaintiff's plurality of burners ruled out infringement. This called for a most careful interpretation of the proceedings before the examiner by one skilled in the art. On the basis of the sparse record before it, and judging from the complexity of the proceedings before the examiner, the trial court was necessarily handicapped in arriving at such a finding. We find it impossible to review this determination. The findings do not cite the applicable pages of the file wrapper and support for the finding is not found in the total proceedings of the examiner. Explanatory testimony was therefore necessary, and it was error to determine the issue without this assistance.
 
 
 30
 While the two structures have some differences they also have similarities whereby the court should hear evidence as to whether they perform substantially the same function in substantially the same way to achieve substantially the same result. Plaintiff is entitled to an opportunity to prove at a trial that the accused device is the functional equivalent of the Thurley patent.
 
 IV. THE INVALIDITY ISSUE
 
 31
 The underlying factual character or quality of patent invalidity in the present context (35 U.S.C. § 103) has been explained by the Supreme Court in Graham v. John Deere Company of Kansas City, 383 U.S. 1, 19, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966):
 
 
 32
 While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at 155 [147], 71 S.Ct. [127] at 131 [95 L.Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. * *
 
 
 33
 And in Eimco Corporation v. Peterson Filters and Engineering Company, 406 F.2d 431 (10th Cir. 1969), this Court commented on the Supreme Court's observation that there are difficulties in applying the nonobviousness test (obviousness to a person having ordinary skill in the art):
 
 
 34
 The difficulties referred to are questions of fact to be determined in the trial court. The courts agree that the ultimate question of validity is one of law, Griswold v. Oil Capital Valve Co. [10 Cir., 375 F.2d 532], supra, but obviousness as referred to in Section 103 is a question of fact for the trial court, which determination should not be set aside in the absence of clear error. * * *
 
 
 35
 Judging from the record and the trial court's findings, it considered only the prior art patents which had been considered by the Patent Office at the time of application and issuance. The court did note that Claim 1 was but an aggregation of old elements. Beyond that the court simply concluded that "The undisputed facts which are evidenced by the record submitted to the court in support of defendant's motion for summary judgment, show that the alleged invention disclosed by Claim 1 of the Thurley patent is obvious." Thus, the "findings" do not include a careful in depth analysis from the standpoint of one having ordinary skill in the art, and, indeed, did not make a finding as to the existent level of ordinary skill in the pertinent art; nor was there a finding as to differences (or similarities) between the prior art and Claim 1 issue, all as required by Graham, supra.
 
 
 36
 Furthermore, the court's refusal to consider the tendered affidavit of plaintiff's expert, McMinn, was not justified containing as it did explanations and reasons in support of plaintiff's position. That it was conclusory as noted by the court was an insufficient reason for rejecting it. Expert opinion has this quality.
 
 
 37
 Thus, the complicated issue as to obviousness could not be here determined without reference to expert testimony and without a careful analysis in the light of the standards laid down in Graham v. John Deere Company, supra. A trial of this issue was necessary.[2]
 
 V. THE MOTION FOR SUMMARY JUDGMENT
 
 38
 The patent case as such is not immune from summary judgment procedures. Where there are no triable issues of fact and the result is clearly a matter of law, the cause is fully susceptible to the summary judgment.[3]
 
 
 39
 There are, for example, cases in which there is no doubt as to the claims of the patent and factual presentation is not necessary to "illuminate the patent."[4] But where, as here, the device is complicated so that expert testimony is necessary, the record is inconclusive, and there are conflicting facts and inferences presented, a trial is necessary. Thus, it is the complexity factor plus the presence of genuine disputes rather than the fact that it is a patent case which renders the summary judgment procedure inappropriate.
 
 
 40
 The judgment is reversed and the cause is remanded for trial on all issues.
 
 
 
 Notes:
 
 
 [1]
 This latter claim is not before us
 
 
 [2]
 The high degree of importance in fairly and adequately trying the issue of patent validity the first time is emphasized by the May 3, 1971 decision of the Supreme Court in Blonder-Tongue Laboratories v. University of Ill. Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. There it was held in a patent infringement suit that the patentee was estopped to assert the validity of a patent which had been declared invalid in a prior suit involving a different defendant unless the patentee is able to demonstrate that he did not have full and fair opportunity, procedurally, substantively, and evidentially to litigate the validity of his patent in the prior suit. This means that the patentee is entitled to but one time around or if as here he contends that the opportunity afforded him at the prior trial was inadequate, he is placed in the position of collaterally attacking the other proceedings in an effort to obtain a proper trial
 
 
 [3]
 Allen v. Radio Corporation of America, 47 F.Supp. 244 (D.C.Del.1942), wherein the court, Judge Leahy, said:
 Despite cases which state that questions involving the validity of patents should not ordinarily be determined without the benefit of expert testimony and the opportunity for full cross-examination, I am unable to see why the granting or withholding of judgment under Rule 56 should depend upon different principles and call for the presence of different considerations in an infringement case than in other civil actions. The rule provides that the judgment sought shall be rendered on the pleadings, depositions, admissions, and affidavits, if there remains no genuine issue as to any material fact. There is no special rule for patent cases.
 
 
 [4]
 Park-In-Theatres v. Perkins, 190 F.2d 137 (9 Cir. 1951). Here it was held that the patent was void on its face for lack of invention